STOREN ET AL. *v.* J. D. ADAMS MANUFACTURING CO.

[No. 26,401. Filed April 30, 1937. Rehearing denied September 20, 1937.]

*Philip Lutz, Jr.,* Attorney-General, *Fred A. Wiecking,* Assistant Attorney-General, and *Joseph P. McNamara,* Deputy Attorney-General, for the appellants.

*Matson, Ross, McCord, & Clifford, Baker & Daniels, Bamberger & Feibleman, Schortemeier, Ely & Wood, White, Wright & Boleman,* and *Harry T. Ice,* for appellee.

FANSLER, J.—Appellee brought this action seeking a declaratory judgment construing certain portions of the Gross Income Tax Act of 1933 (Acts 1933, c. 50, p. 388, Burns Ann. St. 1933, §64-2601 et seq., §15981 et seq. Baldwin's 1934). The facts were stipulated and are not in dispute. There was a judgment for appellee.

The ruling on appellants' motion for a new trial is assigned as error.

Appellee is an Indiana corporation, engaged in manufacturing machiney, tools, appliances, and equipment for the construction, improvement, and repair of roads and highways. Its home office, and principal place of business, and its only manufacturing plant, is located in the state of Indiana. It sells a substantial portion of its products to purchasers within the state, some to the ultimate user or consumer, and the remainder to dealers who resell. It sells a substantial portion of its products, through selling agents or otherwise, to dealers in other states and in foreign countries. All sales made outside of the state are upon orders taken subject to the approval of the home office, shipment is made from the factory, and payment is made to the home office. Its receipts from business in other states and foreign countries, during each of the four years immediately preceding the trial, were in excess of $1,000,000, and

amounted to approximately 80 per cent of its entire gross income from the sale of its products. At certain seasons of each year it invests, for temporary periods, a substantial portion of its working capital in bonds or other obligations of municipal corporations within the state, which obligations are interest-bearing, and by, the statutes in force at the time of issuance, are exempt from taxation; and, since the 1st day of May, 1933, it has collected, as part of its gross income, interest on such obligations in excess of $2,500.

Upon these facts, the trial court held: "That said Gross Income Tax Act of 1933 does not by any of its terms or provisions authorize or require the assessment or collection of any tax upon the gross income derived by the plaintiff, or others similarly situated, from business so conducted in commerce between the State of Indiana and other states of the United States or between the State of Indiana and foreign countries, but such gross income is by said act expressly excepted from such tax." It further held that, in so far as the act purports or attempts to impose a tax upon gross income, consisting of interest upon tax-exempt securities, it impairs the obligation of contracts, and is void under the state and federal Constitutions. It further found that the plaintiff was not engaged in any business except manufacturing, as defined in section 3(a) of the act, and that the law does not by any of its terms authorize or require the assessment of any tax upon the gross income of appellee, or others similarly situated, derived from sales to ultimate users or consumers, at any other or different rate than one-fourth of one per cent, the rate which applies to manufacturers.

Three questions are presented: (1) Is that part of appellee's gross income, which is derived from sales of appellee's products to ultimate users, taxable at one per cent, the rate which applies to those engaged in the

business of retailing, or at one-fourth of one per cent, the rate which applies to those engaged in the business of manufacturing? (2) Is that part of appellee's gross income, derived from interest payments on tax-exempt bonds of municipal corporations of the state of Indiana, taxable? (3) Is that part of appellee's gross income, which is derived from the sale of its products in interstate and foreign commerce, taxable?

Section 3 of the act provides for a tax "upon the entire gross income of every person engaged in the business of manufacturing" at the rate of one-fourth of one per cent, and "upon the entire gross income of every person engaged in the business of retailing" at the rate of one per cent.

It is appellee's contention that sale is an indispensable incident to the business of manufacturing, and that whether a person is engaged in manufacturing is not determined by the manner in which he sells his goods, and that those engaged in manufacturing are, under the statute, taxable at the rate of one-fourth of one per cent only, regardless of whether their sales are to jobbers, wholesalers, or at retail directly to the consumer. If this position can be sustained, it means that manufacturers, who operate exclusively through retail stores or stations and compete with retailers in the ordinary sense, have a discriminatory advantage by reason of the fact of manufacturing their own product. The goods sold by the ordinary retailer come down to him through a manufacturer, a jobber, and a wholesaler, and are burdened with one-fourth of one per cent tax upon the manufacturer, the jobber, and the wholesaler, and one per cent upon the retailer, a total of $1\frac{3}{4}$ per cent, while his competing retailer, who manufactures his own product, would pay but one-fourth of one per cent. There is nothing in the act which indicates a legislative design and intention to create such a dis-

criminatory situation. The basic tax upon taxpayers generally is one per cent. Section 4 recognizes that the same person or corporation may be taxable upon different parts of his income at different rates, and provides that each person shall be subject to taxation at the highest rate applicable to any part of his gross income unless he shall segregate the parts subject to different rates. Some reason can be seen for taxing manufacturers, jobbers, and wholesalers at a lower rate, since their merchandise moves in larger quantities and in greater price competition, and since the articles manufactured and sold by them must be ultimately burdened with successive taxes. A manufacturer, as the term is commonly understood, is one who processes raw material "and stands between the original producer and the dealer." *Indiana Creosoting Co.* v. *McNutt, Governor, et al.* (1936), 210 Ind. 656, 5 N. E. (2d) 310, 314.

The question of whether there would be a sufficient constitutional basis for classification and discrimination between those who manufacture their own merchandise, and other retailers, need not be considered, since no legislative intention to so discriminate is apparent, and a reasonable interpretation of the act precludes such a conclusion.

The rate does not depend upon the business in which the taxpayer is primarily engaged, but upon the activity from which each item of his gross income is received. Sales to ultimate consumers must be regarded as retail sales, whether made by the producer of the article sold or another.

The court erred in concluding that that part of the income of a manufacturer, which was received from sales at retail to the ultimate users, is not taxable at one per cent.

The bonds from which the income was received are specifically exempted from taxation, but there is no sta-

tutory provision which exempts the interest from excise taxes which may be imposed by the state.

In *Orr* v. *Gilman* (1902), 183 U. S. 278, 289, 22 S. Ct. 213, it was held by the Supreme Court of the United States: "That a transfer or succession tax, not being a direct tax upon property, but a charge upon a privilege exercised or enjoyed under the law of the State, does not, when imposed in cases where the property passing consists of securities exempt by statute, impair the obligation of a contract within the meaning of the Constitution of the United States." Upon the same reasoning, it does not offend against article 1, section 24, of the Constitution of Indiana. The gross income tax is not a tax upon property, but an excise upon a privilege. *Miles et al.* v. *Department of Treasury et al.* (1925), 209 Ind. 172, 199 N. E. 372.

The court erred in holding that that part of appellee's gross income, which consists of interest on tax-exempt bonds is exempt from gross income tax.

It was held that section 6 (a) of the law excepts gross income derived from commerce between the several states and with foreign countries. Section 6, so far as it is pertinent, reads as follows: "There shall be excepted from the gross income taxable under this act. (a) So much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, to the extent to which the State of Indiana is prohibited from taxing under the Constitution of the United States of America." This clause excepts such gross income only to the extent that taxation is forbidden by the Constitution, and the act must be construed as contemplating a tax on all income that the state is permitted to tax. Courts will not prevent the carrying out of a legislative intention unless the Constitution clearly forbids. The act

must be construed as levying the tax unless such a levy is violative of article 1, section 8, of the Federal Constitution. Final jurisdiction of questions involving the Federal Constitution is in the Supreme Court of the United States, and the principles announced in its decisions are controlling upon such questions. Any tax upon one engaged in interstate commerce is a burden upon interstate commerce, but all taxes are not illegal burdens. It is only where the tax is laid upon interstate commerce as such, or in such a manner as to discriminate against interstate commerce, that it is to be condemned. Those engaged in interstate commerce are not exempt from taxation by the states, and any tax that does no more than impose upon them or their property a reasonable share of the burdens of government will not be condemned. In passing on tax legislation, the court has looked beyond the form and language of the act, and its construction and characterization by the state courts, and determined its constitutionality in each instance from its practical operation and effect. This involves an examination of the law to ascertain the manner in which it operates and the effect upon the taxpayer.

It has been repeatedly held that a state tax, measured by gross receipts, which in effect does no more than burden the taxpayer engaged in interstate commerce with a fair share of the regular property taxes levied by the state, or its equivalent, cannot be condemned as violating the Federal Constitution. But the decisions sustain the rights of the state to levy excises against those engaged in interstate and foreign commerce, and therefore, while the cases refer to a fair share of the regular property taxes, they must be construed as establishing the rule that a statute will not be condemned if in effect it burdens those engaged in interstate commerce, only to the extent of their just share of governmental bur-

dens, under any reasonable method of general taxation.

The statute here under consideration levies a tax upon all who are domiciled within the state, based upon the priviledge of domicile, and transacting business, and receiving gross income, within the state, and measured by the amount of gross income. The rate upon income derived from manufacturing, mining, producing minerals, oil, and gas, timber, and agricultural products, and from wholesaling and jobbing commodities, is one-fourth of one per cent. The rate for income derived from all other business or occupations, including income from the sales of real estate, and the performance of contracts, and from the investment of capital, and all receipts from all other sources whatsoever, is one per cent. It is thus seen to be a general tax, affecting all who are domiciled within the state who receive income, except those whose income is less than $1,000. There are other minor exemptions of the usual character. The provisions of the law are discussed in detail in *Miles et al.* v. *Department of Treasury et al., supra,* in which the law was held constitutional, and the tax an excise.

The statute was enacted concurrently with other legislation limiting levies upon property. The greater portion of the revenue raised goes back to local units of government for the maintenance of schools and other activities otherwise dependent upon property levies. Legislative history indicates that one of the purposes of the Gross Income Tax Law was to redistribute governmental burdens and relieve property of a tax burden which was thought to be too great.

In support of its contention that the tax imposed is not repugnant to the commerce provision of article 1, section 8, of the Constitution of the United States, appellants assert that the case of *American Manufacturing Co.* v. *City of St. Louis* (1919), 250 U. S. 459, 462,

463, 464, 465, 39 S. Ct. 522, is decisive of the question. That case involved an ordinance of the city of St. Louis, imposing an excise tax upon manufacturers and merchants; the amount of the tax to be ascertained by, and proportioned to, the amount of sales of goods, whether sold within or without the state, and whether in domestic or interstate commerce. The ordinance was construed by the state Supreme Court as a license tax, graduated to accord to the amount of business carried on to the point of realizing profit or liquidation of loss by the sale of the product; that the fixing of the amount of the tax by the amount realized upon sale of the goods is equitable; that it is a tax upon the manufacturer for the privilege of pursuing his business under the protection of the laws of the state and city ordinances, notwithstanding the amount of the tax is ascertained by the final sale price of the goods within or without the state. It is held that this construction by the Supreme Court of the state is conclusive, but that, "as has been held very often, the question whether a state law or a tax imposed thereunder deprives a party of rights secured by the Federal Constitution depends not upon the form of the act, nor upon how it is construed or characterized by the state court, but upon its practical operation and effect." It is said in the opinion:

"No tax has been or is to be imposed upon any sales of goods by plaintiff in error except goods manufactured by it in St. Louis under a license conditioned for the payment of a tax upon the amount of the sales when the goods should come to be sold. The tax is computed according to the amount of the sales of such manufactured goods, irrespective of whether they be sold within or without the State, in one kind of commerce or another; and payment of the tax is not made a condition of selling goods in interstate or in other commerce, but only

of continuing the manufacture of goods in the City of St. Louis.

"There is no doubt of the power of the State, or of the city acting under its authority, to impose a license tax in the nature of an excise upon the conduct of a manufacturing business in the city. Unless some particular interference with federal right be shown, the States are free to lay privilege and occupation taxes. *Clark* v. *Titusville,* 184 U. S. 329; *St. Louis* v. *United Railways Co.,* 210 U. S. 266, 276.

"The city might have measured such tax by a percentage upon the value of all goods manufactured, whether they ever should come to be sold or not, and have required payment as soon as, or even before, the goods left the factory. . . .

"In the outcome the tax is the same in amount as if it were measured by the sale value of the goods but imposed upon the completion of their manufacture. The difference is that, for reasons of practical benefit to the taxpayer, the city has postponed payment until convenient means have been furnished through the marketing of the goods.

"In our opinion, the operation and effect of the taxing ordinance are to impose a legitimate burden upon the business of carrying on the manufacture of goods in the city; it produces no direct burden on commerce in the goods manufactured, whether domestic or interstate, and only the same kind of incidental and indirect effect as that which results from the payment of property taxes or any other and general contribution to the cost of government. Therefore, it does not amount to a regulation of interstate commerce. And, for like reasons, it has not the effect of imposing a tax upon the property or the business transactions of plaintiff in error outside of the State of Missouri, and hence does

not deprive plaintiff in error of its property without due process of law.

"Our recent decisions cited in opposition to this view, *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 297; *Looney* v. *Crane Co.,* 245 U. S. 178, 188, and other cases of the same kinds referred to therein, are so obviously distinguishable that particular analysis is unnecessary."

It is said in *Miles et al.* v. *Department of Treasury et al., supra,* 209 Ind. 172, on page 188, 199 N. E. 372, 379: "We conclude that the tax in question is an excise, levied upon those domiciled within the state or who derived income from sources within the state, upon the basis of the privilege of domicile or the privilege of transacting business within the state, and that the burden may reasonably be measured by the amount of income. The reasoning which justified a tax upon the basis of domicile as readily supports and justifies a tax upon the basis of the right to receive income within, or transact business under the protection of, the state."

The St. Louis ordinance discriminates against those most likely to be engaged in interstate commerce—manufacturers and merchants—since it lays a burden on them that is not laid on others, while the law under consideration lays a burden upon every person domiciled in the state who receives a gross income. If there be discrimination, it is in favor of those likely to be engaged in interstate and foreign commerce, since they pay but one-fourth of one per cent, while other taxpayers pay one per cent. In other respects the differences in the law are in the form, the words, and not in the substance. The substantial difference that the law here is general and discriminates in favor of those engaged in interstate commerce, weighs in favor of constitutionality. Both taxes, in so far as they affect commerce, are measured by the gross income from the sale of merchandise.

Both, in practical operation and effect, exact a contribution to the support of government, measured by the gross income, for the privilege of transacting business under the protection of the local sovereign. Neither was designed nor intended as a regulation of, or a tax or burden upon, interstate commerce as such, or as a discrimination against those engaged in interstate commerce. If the tax here is to be condemned, while the St. Louis ordinance is upheld, it must be because of the form of the enactment and the words used. By amendment, manufacturers and merchants could be taken out of the Gross Income Tax Law, and, by a new enactment, following the language of the St. Louis ordinance, they could be burdened exactly as they are burdened here. It is clear from the decisions that, under such circumstances, a tax will not be condemned as unconstitutional. Other statutes, levying taxes to be measured by gross receipts, have been condemned, but always upon the ground that they were discriminatory or that they levied a direct burden upon interstate or foreign commerce as such.

There are statements in *U. S. Glue Co.* v. *Town of Oak Creek* (1918), 247 U. S. 321, 326, 327, 328, 329, 38 S. Ct. 499, and *Peck & Co.* v. *Lowe* (1918), 247 U. S. 165, 38 S. Ct. 432, which have been considered as condemning taxes measured by gross income, merely because the amount of the tax is based upon gross income. Both opinions were written before the St. Louis case above referred to, and, since a tax measured by gross income was there upheld, and taxes of the same character upheld in other cases, these decisions cannot have been so intended. The first case involved a net income tax of the State of Wisconsin; the second the federal net income tax. A general tax, measured by gross income, has never been passed upon by the Supreme Court of the United States, and no such tax was under consideration in the cases referred to.

It must be concluded that the statements in those cases concerning gross income taxes were used as argument in defense of net income taxes, and not in condemnation of gross income taxes as such.

In *U. S. Glue Co.* v. *Town of Oak Creek, supra,* the court considered and sustained the Wisconsin Net Income Tax Law. The contention was that income derived from interstate commerce was not taxable. The tax was general, and not upon any particular business or calling. It is said in the opinion:

"It is settled that a State may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule. . . . (a) that the immunity of an individual or corporation engaged in interstate commerce from state regulation does not prevent a State from imposing ordinary property taxes upon property having a situs within its territory and employed in interstate commerce; and (b) that the franchise of a corporation, although that franchise be the business of interstate commerce, is, as a part of its property, subject to state taxation, provided at least the franchise be not derived from the United States. . . .

"Yet it is obvious that taxes imposed upon property or franchises employed in interstate commerce must be paid from the net returns of such commerce, and diminish them in the same sense that they are diminished by a tax imposed upon the net returns themselves."

It is further said:

"The distinction between direct and indirect burdens, with particular reference to a comparison between a tax upon the gross returns of carriers in interstate commerce and a general income tax imposed upon all inhabitants incidentally affecting carriers engaged in such commerce, was the subject of consideration in *Philadelphia & Southern S. S. Co.* v. *Pennsylvania,* 122 U. S.

326, 345, where the court, by Mr. Justice Bradley, said: 'The corporate franchises, the property, the business, the income of corporations created by a State may undoubtedly be taxed by the State; but in imposing such taxes care should be taken not to interfere with or hamper, directly or by indirection, interstate or foreign commerce, or any other matter exclusively within the jurisdiction of the Federal government.' Many previous cases were referred to.

"The correct line of distinction is so well illustrated in two cases decided at the present term that we hardly need go further. In *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, we held that a state tax upon the business of selling goods in foreign commerce, measured by a certain percentage of the gross transactions in such commerce, was by its necessary effect a tax upon the commerce, and at the same time a duty upon exports, contrary to §§8 and 10 of Article 1 of the Constitution, since it operated to lay a direct burden upon every transaction by withholding for the use of the State a part of every dollar received. On the other hand, in *Peck & Co.* v. *Lowe, ante* 165, we held that the Income Tax Act of October 3, 1913, c. 16, §2, 38 Stat. 166, 172, when carried into effect by imposing an assessment upon the entire net income of a corporation, approximately three-fourths of which was derived from the export of goods to foreign countries, did not amount to laying a tax or duty on articles exported within the meaning of Art. 1, §9, cl. 5 of the Constitution. The distinction between a direct and an indirect burden by way of tax or duty was developed, and it was shown that an income tax laid generally on net incomes, not on income from exportation because of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the

recipient of the income was free to use it as he chose, was only an indirect burden.

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss or to so diminish the profits as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States."

It will be noted that the statment that property taxes are paid from *net* returns is not accurate, since an ordinary property tax must be paid whether there are net returns, or any returns, from the property. In *Philadelphia & Southern Steamship Co.* v. *Pennsylvania, supra,* (1887), 122 U. S. 326, 7 S. Ct. 1118, on pages 344, 345, the court said of the tax: "We do not think that it can prop-

erly be regarded as an income tax. It is not a general tax on the incomes of all the inhabitants of the state; but a special tax on transportation companies. Conceding, however, that an income tax may be imposed on certain classes of the community, distinguished by the character of their occupations; this is not an income tax on the class to which it refers, but a tax on their receipts for transportation only. . . . It is unnecessary, therefore, to discuss the question which would arise if the tax were properly a tax on income. It is clearly not such, but a tax on transportation only."

While it is true that in the Peck case reference is made to the fact that the levy is upon the income net after all the expenses are paid and losses are adjusted, stress is put upon the fact that there is no discrimination, and that the tax is a general tax. A law which taxes the net income of persons engaged in foreign commerce, to the exclusion of all other persons, could not be upheld, notwithstanding the levy is effective only after expenses are paid and losses adjusted. Such a law would clearly be held invalid, since it would be directly discriminatory, and would not have the saving grace of being a general law affecting all persons, and thus the effect on commerce an incidental feature only. It must be concluded that the fact that the tax was general, and not discriminatory, controlled the decision. In the discussion in both net income tax cases, the court must have had in mind gross income tax laws affecting special classes, such as had been dealt with in the Philadelphia & Southern Steamship Co. case and the Crew Levick Co. case, and not general gross income tax laws. It is true that: "A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise." But it has never been denied, and has been expressly recognized, that general property taxes are a burden upon com-

merce, and that, especially where the value of the property is determined in whole or in part by gross receipts, the tax upon the property affects each transaction in proportion to its magnitude. Property taxes must be paid from the proceeds of the business if it is to continue, and in ordinary accounting taxes are set up as a cost which must be taken into consideration in fixing selling prices, and it may be said, concerning an ordinary property tax, that: "Conceivably it may be sufficient to make the difference between profit and loss or to so diminish the profits as to impede or discourage the conduct of the commerce." A manufacturer or wholesaler, located in a city or state where property taxes are high, access to market being equal, cannot compete upon even terms with an equally equipped competitor located in a community where property taxes are exceptionally low. The difference may be slight, but it is an impediment. A tax of one-fourth of one per cent upon gross income may amount to no more than the difference in property taxes in a community where the taxes are high and another where taxes are low. If a given concern does $1,000,000 of export business, and earns a net profit of 5 per cent, or $50,000, the result is the same whether it is taxed at one-fourth of one per cent upon gross income or five per cent upon net income. Selling prices are fixed, to some extent at least, by competition and market resistance, and in either event the actual net income result is the same, and the actual burden upon the business is identical. It would seem therefore that the most cogent reasons given in the Peck case, for supporting the net income tax law, are the fact that it is not discriminatory, and that it is a general tax. These are the reasons consistently given in support of property taxes, including those in which the value of the property for tax purposes is measured by gross income. All taxes are a burden, but those that have been con-

demned, as in *Philadelphia & Southern Steamship Co.* v. *Pennsylvania, supra,* and *Crew Levick Co.* v. *Commonwealth of Pennsylvania, supra,* were not general taxes laid upon all citizens, and they were on their face discriminatory against commerce.

It is said in *Cudahy Packing Co.* v. *State of Minnesota* (1918), 246 U. S. 450, 453, 38 S. Ct. 373: "On the other hand, if what is done is to reach the property and not to tax the gross earnings, the latter being taken merely as an index or measure of the value of the former, it well may be that the objection urged against the tax is untenable; for, as this court has said, 'by whatever name the tax or taxes may be called that are fixed by reference to the value of the property, if they are not imposed because of its use in interstate or foreign commerce, and if they amount to no more than would be legitimate as an ordinary tax upon the property, valued with reference to the use in which it is employed, they are not open to attack' as restraining or burdening such commerce."

It is said in many of the cases that, if a tax on gross income or gross revenue (and none of the cases deal with a general tax) is in lieu of other taxes on property, the tax is valid, but that if it is in addition to property taxes, and a tax upon the income, it is an undue and forbidden burden. But, according to the oft-repeated statements in the opinions that the name or character of the tax is of secondary importance, and that undue burden and discrimination is the primary thing, it will be seen that it is not important whether the tax is in fact a property tax or an excise. *Pullman Co.* v. *Richardson, etc.* (1923), 261 U. S. 330, 43 S. Ct. 366. It must therefore be assumed that the decisions were not intended to lay down the rule that a tax based upon gross income, to be valid, must be a property tax, while a tax on net income may be sustained although it is an excise. It seems clear from all the cases that the distinction lies in discrim-

ination. In the Philadelphia & Southern Steamship Co. case the tax was upon the gross income because it was derived from interstate commerce. A tax upon property, because it is used in interstate commerce, would likewise be condemned. It was held in *Galveston, etc., R. Co.* v. *State of Texas* (1908), 210 U. S. 217, 28 S. Ct. 638, that a tax, by whatever name, will be upheld if it amounts to no more than the ordinary tax on property or the just equivalent. In other words, if it is designed and intended only as the taxpayer's just share of the cost of government, and not as a burden upon, or discrimination against, interstate commerce, it will not be condemned. "Even interstate business must pay its way." *Postal-Telegraph Cable Co.* v. *City of Richmond* (1919), 249 U. S. 252, 259, 39 S. Ct. 265. In *Pullman Co.* v. *Richardson, etc., supra,* 261 U. S. 330, on page 339, it was said, in sustaining the law: "There is no ground for thinking that it operates as a discrimination against interstate commerce." And in *Bass, etc., Ltd.* v. *State Tax Commission* (1924), 266 U. S. 271, 283, 45 S. Ct. 82, that the act was not a mere act "under the guise of legitimate taxation." In *U. S. Glue Co.* v. *Town of Oak Creek, supra,* it is said that a corporation engaged in interstate commerce is liable to ordinary taxes, and in *Shaffer* v. *Carter, State Auditor, et al.* (1920), 252 U. S. 37, 40 S. Ct. 221, that the states have full power to tax their people and their property. It is said in *Matson Navigation Co. et al.* v. *State Board of Equalization, etc., et al.* (1936), 297 U. S. 441, 444, 56 S. Ct. 553, that: "Unquestionably annual profits, gains or net income derived from business done within the State is an indication sufficiently significant to be deemed a reasonable base on which to compute the value of that use." The case involved corporate franchises, but it is unquestionably true also that annual profits, gains, or net income have sufficient significance to be deemed a reasonable basis for taxation of citizens gen-

erally. No reason is pointed out why gross income is not in the same category, and in *Miles et al.* v. *Department of Treasury et al., supra,* it was held to have suffi-cient significance to be a reasonable basis for a tax upon residents of the state generally. If business is done, there is a burden upon the facilities of government with-out regard to whether there is profit. The state func-tions for those who make a profit and for those who do not. Governmental instrumentalities are not designed to guarantee a profit. The state serves both, those who profit and those who do not. Why one who manufactures and sells a $1,000,000 of machinery in this state and makes no profit should be exempt from taxation, while his competitor who manufactures and sells a like amount and makes a profit should be compelled to pay, is not clear.

There is nothing in the cases that condemns a non-discriminatory gross income tax if it does nothing more than burden corporations engaged in interstate com-merce with their proper share of the burdens of the government under which they conduct their operations. The tax under consideration here is general. It not only does not discriminate against those engaged in inter-state commerce, but seems to discriminate in their favor. It may be assumed that most taxpayers engaged in interstate commerce are manufacturers and. whole-sale dealers in merchandise. They are taxed at the rate of one-fourth of one per cent on their gross incomes. The taxpayer generally is taxed at the rate of one per cent of his gross income.

In *Miles et al.* v. *Department of Treasury et al., supra,* 209 Ind. 172, on pages 191, 192, 199 N. E. 372, 380, 381, it is said: "The lower rate is imposed upon those whose activities bring, or are likely to bring, them in com-petition with residents of other states, and who are sub-ject to such competition within the state of Indiana as

well as without. Any tax measured by the extent of the business activities of such persons handicaps them in their activities. It is within the scope of legislative power in levying taxes to vary rates upon considerations of public policy, and, if upon the theory that to do otherwise might tend to discourage given industries, it may put a lighter burden upon them so long as all in like circumstances are treated alike."

It is well settled that, if any state of facts reasonably can be conceived that will sustain a law, the existence of that state of facts must be assumed, and the burden is upon him who assails the law to show injury in the facts. There is no discrimination under this law between manufacturers and wholesalers residing in the state, and, in so far as those engaged in interstate and foreign commerce are concerned, it must be assumed that their competitors in other states and in foreign countries "bear their proper share of the burdens of the government under whose protection they conduct their operations."

The purpose of the Gross Income Tax Law was to broaden the basis of taxation and to relieve property of some of the burden of maintaining the government. It was purposed to reach those who paid little or no property tax and who received benefits or potential benefits from the instrumentalities of the government for which they did not carry a proportionate share of the burden. Property-owner taxpayers on the whole are benefited. Some property owners, though their property tax is lightened, may pay a larger proportion of taxes because of the gross income tax, some may pay less, but it is clear that the owner of a given amount of property, who conducts a large manufacturing business in the state, puts more burden or potential burden upon the instrumentalities of government, maintained and standing by for his protection, than one with a like amount of

property who conducts a smaller business, regardless of whether the products of the business are sold within or without the state.

Whether the combined property and gross income tax of appellee is more than its property tax before the enactment of the Gross Income Tax Law does not appear, nor is it material. The action is brought by appellee for its own benefit and for those in like situation, which we assume to mean those who are engaged in interstate, or foreign commerce, including farmers who sell their livestock and other produce outside the state. Whether each individual will now pay more or less tax than before will be governed by the amount of taxable property owned in proportion to gross income, and by the location of the property, since taxes for local purposes vary in different communities and in different years. Such unusual expenses of government as poor relief, in connection with the high rate of tax delinquency during depression years, tended to increase property tax rates in some communities, but such current fluctuations or differences due to temporary local conditions, or the variation in the amount of the total taxes collected for governmental purposes, cannot control or affect the result. The evident legislative purpose was to levy a tax generally without discrimination against those who were engaged in whole or in part in interstate commerce. It was the purpose to broaden the tax bases in order to relieve appellee's property, and the property of all others, of what the Legislature considered an unjust burden. If appellee was not relieved of property taxes to the extent of its new burden under the Gross Income Tax Law, it is due to circumstances over which the Legislature could exert no control, since many pay taxes on gross income who paid little or no taxes on property; and, since the total taxes collected were approximately the same as before, it is obvious that property owners generally are

paying no more in property and gross income taxes, but are paying less property taxes than formerly. It cannot be said that the tax is designed to, or that it does, levy upon appellee and others engaged partly in interstate or foreign commerce more than their fair proportionate share of the expense of maintaining the government under which they conduct their business.

Appellee contends that the tax upon gross income is not the same as a tax upon the value of manufactured goods, since "there are many manufacturers, wholesalers, and merchants in Indiana whose goods are shippel almost entirely by express, parcel-post, truck or freight not prepaid, and hundreds of them, including appellee, who sell their goods in other states at a delivered price which takes into account handling, transportation, and other costs incidental to the interstate character of the business; and in every such case, the gross income tax levied on such gross receipts constitutes a direct tax and burden upon interstate commerce."

Clause (f) of section 1 of the act provides: "That the term 'gross income' shall not include cash discounts allowed and taken on sales; nor freight prepaid by the taxpayer and repaid to him by the purchaser; goods, wares or merchandise, or the value thereof, returned by customers when the sale price is refunded either in cash or by credit; nor the sale price of any article accepted as part payment on any new article sold, if and when the full sale price of the new article is included in the 'gross income' subject to taxation under this act." The question of transportation charges included in the amount of sales, which is a basis for a determination of the tax, is not discussed in the St. Louis case, but it is clear that here the Legislature endeavored to exclude transportation charges and other receipts of cash income which do not come to the taxpayer on account of the value of his

merchandise. If, as contended, there are manufacturers, wholesalers, and merchants, who sell their goods at a delivered price outside of the state, including handling and transportation charges in the price of the goods, so that thus the handling and transportation charges become a part of their gross income upon which they are taxed, the remedy is in their own hands. They may at their option price their goods at the factory, or their place of business, and add the transportation costs. One can hardly complain of a law under which he is only burdened at his option.

The court erred in holding that the law does not authorize or require the assessment of the tax upon the gross income of appellee, and others similarly situated, derived from business conducted in interstate and foreign commerce.

Judgment reversed, with instructions to enter judgment for appellants, as indicated by this opinion.

## DISSENTING OPINION.

TREANOR, J. DISSENTING.—I concur with the first two holdings of the Court, namely (1) that that part of appellee's gross income which is received from sales to the ultimate users of appellee's products is taxable at one per cent, and (2) that the imposition of a gross income tax on interest derived from tax exempt bonds of municipal corporations does not impair the obligation of contract. I dissent from the holding and the reasoning supporting it, that a tax imposed upon gross income of appellee derived from interstate and foreign commerce, is not repugnant to the commerce provision of Article 1, Section 8 of the Constitution of the United States under the law as announced by the Supreme Court of the United States.

In appraising the reasoning and decisions of the Supreme Court of the United States on this question, it is

necessary to keep in view a few fundamental, and guiding rules which the Supreme Court of the United States has consistently applied when considering the question of whether a particular tax law, or tax scheme, of a state violates the interstate commerce clause of the Federal Constitution. It is obvious at the outset that no state tax law ever purports to regulate commerce among the states. Consequently it is the effect of the imposition of the tax burden which determines whether the particular tax law is such that it can be said to constitute a regulation of commerce among the states. No state, under our Federal Constitution, has the power to regulate commerce among the states, and, consequently, if the actual effect of the imposition of a particular tax burden constitutes a regulation of interstate commerce, the statute imposing the burden is invalid. On the other hand the Supreme Court of the United States consistently has recognized that if it is within the power of a state to impose a tax burden upon a particular subject of taxation, the imposition of such a tax burden is not obnoxious to the interstate commerce clause simply because there may be some indirect burden falling upon transactions which fall within the category of commerce among the states.

In determining whether or not the burden imposed by a state tax law constitutes a regulation of interstate commerce the Supreme Court of the United States has held undeviatingly that it is a regulation of commerce if it imposes a direct burden upon such commerce; and has repeatedly stated that a tax measured by the gross receipts, arising from interstate business, is such a burden as it is "by its necessary effect a tax upon such commerce, and therefore a regulation of it."[1] In so holding the Supreme Court has taken the view that any action

---

1. *Crew Levick Co.* v. *Pennsylvania* (1917), 245 U. S. 292, 38 S. Ct. 126.

by a state which directly interfers with free flow of commerce among the states by obstructing or burdening such flow of commerce is in legal contemplation a regulation of it. Consistently with that view the rule frequently has been stated that a tax upon gross receipts from interstate commerce is in violation of the commerce clause.

On the other hand the United States Supreme Court has held consistently that if a tax imposed is upon a subject of taxation, in respect to the taxing of which the state has untrammeled power, such tax does not offend against the commerce clause even though the effect upon the business of particular individuals or corporations may be such as to ultimately and indirectly affect their interstate transactions. In accordance with the latter view excise taxes, or taxes upon property, have been held not to violate the commerce clause even though the gross income of individuals and corporations derived from interstate transactions is used as one of the elements in determining the value of the privilege or the property which is subjected to the tax.

Appellant relies strongly upon the case of *American Manufacturing Company* v. *City of St. Louis*.[2] The tax in that case was held to be an excise tax upon the priilege of engaging in the business of manufacturing; and it was pointed out that gross income or receipts served as a measure of value of the privilege which was subjected to the excise tax. The tax had been imposed by the City of St. Louis under an act of the Missouri Legislature which authorized that city to "license, tax and regulate . . . the occupation of merchants and manu-facturers, and to graduate the amount of annual license imposed upon them in proportion to the sales made by such merchant or manufacturer during the year next preceding any fixed date."

2. 1918), 250 U. S. 459, 39 S. Ct. 522.

To bring the instant case within the holding in the *American Manufacturing Company* v. *City of St. Louis* it would be necessary to construe the Gross Income Tax Act as imposing a privilege tax upon the occupation of manufacturing. It is clear that the General Assembly, in the exercise of the taxing power of Indiana, can impose such a tax. But I am convinced that appellee is correct in its contention that our present Gross Income Act does not impose a tax upon the privilege of engaging in the business of manufacturing. In so far as the tax in question may be considered a privilege tax, it must be treated as a tax upon the privilege of receiving gross income. In the title of the Act the tax which is being imposed is called "A tax upon the receipt of gross income;" and in Section 2 it is declared that the tax imposed is to be "measured by the amount or volume of gross income"; and that "such tax shall be levied upon the entire gross income of all residents . . ." It was stated by this Court in *Miles* v. *Department of Treasury*,[3] "that the tax in question is an excise, levied upon those domiciled within the state or who derive income from sources within the state, upon the basis of the privilege of domicile or the privilege of transacting business within the state, and that burden may reasonably be measured by the amount of income."

Appellant relies upon Section 1-f of the Gross Income Tax Act to support his contention that the tax is "not only upon a privilege exercised wholly within the State of Indiana, but this privilege is measured by the value of the articles manufactured." The particular provision relied upon is as follows: "That the term gross income shall not include cash discounts allowed or taken on sales. Nor freight prepaid by the taxpayer and repaid to him by the purchaser . . ." Appellant urges that by the foregoing provision the words "gross in-

3. 1935), 209 Ind. 172, 199 N. E. 372, 374.

come" are, in effect, defined to mean the value of the manufactured products at the plant. I cannot attach any such significance to the provision quoted. I think the plain intent of the language quoted from Section 1-f is to prevent the inclusion in gross income of certain items which in reality form no part of one's gross income. This is more apparent when one reads all of Section 1-f.

It is my opinion that the tax imposed by our Gross Income Act is a tax upon gross income or gross receipts. And consequently, appellants' third proposition reduces itself to the question of whether that part of appellee's gross income which is derived from the sale of its products in interstate and foreign commerce is taxable under the Constitution of the United States of America. And if such part of appellee's gross income is not taxable under the Constitution of the United States, then it is not taxable by our Gross Income Tax Act which expressly exempts "so much of such gross income as is derived from business conducted in commerce between this State and foreign countries, to the extent to which the State of Indiana is prohibited from taxing under the Constitution of the United States of America."[4] Therefore, the answer to the third question as presented by this appeal must be found in the decisions of the Supreme Court of the United States.

By Article 1, Sec. 9 of the United States Constitution Congress is denied the power to levy any tax or duty "on articles exported from any state." And in the case of *Peck & Co.* v. *Lowe*,[5] the Supreme Court was required to determine whether Section 9 was violated by a congressional act which levied a tax upon the net income derived from export sales. In reaching the conclusion that Section 9 was not violated the Supreme Court em-

4. Sec. 6 (a) Gross Income Tax Act 1933, Ch. 50.
5. (1917), 247 U. S. 165, 174-75, 38 S. Ct. 432.

phasized the fact that the tax was levied upon net income. The thought of the Court is expressed in the following: "The words of the act are 'net income arising or accruing from all sources.' There is no discrimination. At most, exportation is affected only indirectly and remotely. The tax is levied after exportation is completed, after all expenses are paid and losses adjusted, and after the recipient of the income is free to use it as he chooses. Thus what is taxed—the net income—is as far removed from exportation as are articles intended for export before exportation begins. If articles manufactured and intended for export are subject to taxation under general laws up to the time they are put in course of exportation, as we have seen they are, the conclusion is unavoidable that the net income from the venture when completed that is to say, after the exportation and sale are fully consummated, is likewise subject to taxation under general laws. In that respect the status of the income is not different from that of the exported articles prior to the exportation."

In *Crew Levick Co.* v. *Pennsylvania,*[6] the United States Supreme Court had before it "the bare question . . . whether a state tax imposed upon the business of selling goods in foreign commerce, in so far as it is measured by the gross receipts from merchandise shipped to foreign countries, is in effect a regulation of foreign commerce or an impost upon exports, within the meaning of the pertinent clauses of the Federal Constitution." The Court concluded, p. 295-96, that the "imposition of a percentage upon each dollar of the gross transactions in foreign commerce" was "by its necessary effect a tax upon such commerce, and therefore a regulation of it; and, for the same reason" was "in effect an impost or duty upon its exports."

The two foregoing cases furnished the grounds of de-

6. (1917), 245 U. S. 292, 295, 38 S. Ct. 126.

cision for the United States Supreme Court in the later case of *United States Glue Co.* v. *Oak Creek.*[7] The question before the Court in that case was "whether a State, in levying a general income tax upon the gains and profits of a domestic corporation, may include in the computation the net income derived from transactions in interstate commerce without contravening the commerce clause of the Constitution of the United States." The Supreme Court assumed that the answer to the question depended upon whether the tax in question imposed a direct or indirect burden upon interstate commerce; and found the correct line of distinction illustrated in *Crew Levick Co.* v. *Pennsylvania* and *Peck & Co.* v. *Lowe, supra.* The following excerpts are from the opinion in *U. S. Glue Co.* v. *Oak Creek, supra,* pp. 328, 329.

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large."

. . .

"And so we hold that the Wisconsin income tax law, as applied to the plaintiff in the case before us can not be deemed to be so direct a burden upon plaintiff's interstate business as to amount to an unconstitutional interference with or regulation of commerce among the States. It was measured not

7. (1918), 247 U. S. 321, p. 326, 38 S. Ct. 499.

by the gross receipts, but by the net proceeds from this part of plaintiff's business, along with a like imposition upon its income derived from other sources, and in the same way that other corporations doing business within the State are taxed upon that proportion of their income derived from business transacted and property located within the State, whatever the nature of their business."

Under the holding in *Crew Levick Company* v. *Pennsylvania, supra,* and the reasoning in the two cases of *U. S. Glue Compnay* v. *Oak Creek* and *Peck & Co.* v. *Lowe, supra,* it must be concluded that part of appellee's income which is received from its sales in interstate and foreign commerce would constitute a direct burden upon interstate and foreign commerce, and that such a tax would violate the interstate and foreign provision of the United States Constitution as construed by the Supreme Court of the United States. And consequently it is my opinion that the legislative intent, as clearly expressed in Section 6 (a) of the Gross Income Tax Act, is not to impose a tax upon that part of appellee's gross income which is derived from sales transactions in interstate and foreign commerce.

It is my opinion that the trial court was not in error in deciding that the Gross Income Tax Act does not impost a tax upon that part of appellee's gross income which is derived from sales in interstate and foreign commerce.