INDIANA DEPARTMENT OF STATE REVENUE, and Kenneth L. Miller, in his Capacity as Commissioner of the Indiana Department of State, Appellants,

v.

FORT WAYNE NATIONAL CORPORATION, Appellee.

No. 49S10–9406–TA–521.

Supreme Court of Indiana.

April 10, 1995.

Pamela Carter, Atty. Gen., David A. Arthur, Deputy Atty. Gen., Indianapolis, for appellants Indiana Dept. of State Revenue and Kenneth L. Miller, in his Capacity as Com'r of the Indiana Dept. of State Revenue.

William F. Landers, Jr., Thomas M. Shoaff, Baker & Daniels, Indianapolis, for appellees and cross-appellant Fort Wayne Nat. Corp.

Lewis C. Bose, Theodore J. Nowacki, Ronald M. Soskin, George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, amicus curiae for Indiana League of Sav. Institutions, Inc.

### ON PETITION TO TRANSFER

DeBRULER, Justice.

This case is an appeal of a summary judgment against the appellant, Indiana State Department of Revenue, granting Fort Wayne National's claim for refund of a portion of the Financial Institutions Tax (FIT) it paid for the 1990 calendar year. Specifically, appellee Fort Wayne National Corporation (FWNC) contended in the Tax Court that the Department is precluded from using the income from municipal and federal bonds issued after March 11, 1959, and prior to January 1, 1990 in computing Fort Wayne National's tax liability by the General Exemption Statute (GES). The Tax Court granted appellee's motion for summary judgment under Ind. Trial Rule 56(B). *Fort Wayne Nat. v. Dept. of State Revenue* (1993), Ind.Tax, 621 N.E.2d 668. The Department has petitioned this court for review. The petition is granted.

Appellant's brief raises the following issues:

(1) whether the FIT operates as a direct tax on the municipal and federal bonds by using them to measure the taxpayer's FIT liability;

(2) whether the GES precludes the FIT from including the current income of federal and municipal bonds in the determination of the amount of tax to be paid;

(3) whether including federal bond income in the determination of FIT liability violates the non-discrimination requirement of 31 U.S.C. § 3124; and

(4) whether the FIT impairs a contract in violation of the Contract Clause of the U.S. Constitution [1] by using the income from tax exempt municipal bonds to determine the taxpayer's FIT liability.[2]

### Facts

Fort Wayne National Corporation (FWNC), the taxpayer, is a financial institution domiciled in Indiana and is therefore subject to Indiana's Financial Institutions Tax (FIT). The General Assembly passed the FIT in 1990. That same year, the Assembly also added language to the General Exemption Statute, explicitly excepting the FIT from the GES. For the taxable year 1990, FWNC paid $1,973,936 toward its FIT liability. Later, FWNC filed a claim for refund in the amount of $685,533 plus interest. It claimed that the refund sought represented tax either improperly levied upon or measured by municipal and federal bond income from municipal bonds or federal bonds issued after March 11, 1959 and prior to May 1989. The Indiana Department of State Revenue neither granted nor denied the claim for refund within 180 days of its filing. FWNC filed the original tax appeal shortly

---

1. U.S. Const. art. 1, § 10.

2. Although FWNC mentions art. 1, § 24 of the Indiana Constitution in the table of contents of its brief, the issue is not mentioned in the argument section of its brief. Because FWNC fails to specifically raise this issue in its argument, the issue is waived. Ind.App.Rule 8.3(A)(7); *Clemens v. State* (1993), Ind., 610 N.E.2d 236, 244.

thereafter. The parties have stipulated to the material facts.

### Discussion

### I. The Nature of the Financial Institutions Tax (FIT)

In order to determine the nature of the FIT, the starting point is the distinction between income, property, and excise taxes within American revenue systems. The United States Supreme Court has long recognized two great categories of taxes: direct or indirect. To the class of direct taxes belong taxes upon income and property; to the class of indirect taxes belong excises, duties, and imposts. *Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (1895). Historically, whether a federal tax was classified as a direct or indirect tax determined whether it was subject to either the apportionment clause or the uniformity clause of the United States Constitution.[3] For federal income taxes, the question of whether the federal income tax was a direct tax became superfluous with the passage of the Sixteenth Amendment.

▮▮ The Indiana Courts have adopted the direct-indirect tax as well. The distinction between property taxes and excise taxes became an issue in the applicability of art. 10, § 1 of the Indiana Constitution to various state taxes. See *Lutz v. Arnold* (1935), 208 Ind. 480, 193 N.E. 840; *Miles v. Department of Treasury* (1935), 209 Ind. 172, 199 N.E. 872, *appeal denied*, 298 U.S. 640, 56 S.Ct. 750, 80 L.Ed. 1372 (1935). *Lutz* addressed the issue of whether a general intangibles tax was an excise tax or a property tax.[4] The court held that the general intangibles tax was an excise tax. The holding in *Lutz* hinged on the distinguishing characteristic of an excise tax, i.e., that it is "a tax imposed upon the performance of an act, the engaging in an occupation, *or the enjoyment of a privilege....*" *Lutz*, 208 Ind. at 489, 193 N.E. at 844 (emphasis added). The distinction between a tax on property and an excise tax on

the exercise of a privilege was also explicitly recognized:

> the tax imposed under the act is for the right to exercise one or more of the privileges as above set out. It does not attempt to impose the tax on property included in the class defined and it fixes the rate of the tax and the method of measuring the amount of the tax to be paid by each person subject to the tax. *The tax is not payable unless the privileges as set out are exercised and the exercising of the privileges is made the occasion for the tax.*

*Lutz*, 208 Ind. at 490–91, 193 N.E. at 844 (emphasis added). Similarly, this Court ruled in *Miles* that the Gross Income Tax Act of 1933 created an excise tax, rather than a property tax:

> We conclude that the tax in question is an excise, levied upon those domiciled within the state or who derived income from sources within the state, *upon the basis of the privilege of domicile or the privilege of transacting business within the state, and that the burden may reasonably be measured by the amount of income.*

*Miles*, 209 Ind. at 188, 199 N.E. at 379. Given our holding in *Miles*, it is manifest that an excise or franchise tax may be measured by a taxpayer's income without being construed as an income tax. Moreover, municipal bonds that are exempt from direct state and federal taxation can be used to measure a taxpayer's excise tax liability. *Storen et al. v. J.D. Adams Mfg. Co.* (1937), 212 Ind. 343, 7 N.E.2d 941, *reh'g denied, rev'd in part, aff'd in part,* 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365 (1938). The United States Supreme Court has also ruled that federal obligations otherwise exempt from direct state taxation may be included in the determination of a corporation's "net worth" for purposes of a state franchise tax:

> Appellant argues further that even if this is a franchise tax, it must fall because its effect is the same as if it had been imposed directly on the tax-exempt federal securities. Since the tax remains the same

---

3. U.S. Const. art. 1, § 9, cl. 4, U.S. Const. art. I, § 8, cl. 1, respectively. See generally MERTENS, LAW OF FEDERAL INCOME TAXATION, Vol. 1, Ch. 4, § 4.04.

4. Throughout the case law, the term "excise tax" is a collective term which denotes a number of various indirect taxes, including franchise and privilege taxes.

whatever the character of the corporate assets may be, no claim can be sustained that this taxing statute discriminates against the federal obligations. And since this is a tax on the corporate franchise, it is valid despite the inclusion of federal bonds in the determination of net worth. This Court has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property.

*Werner Machine Co., Inc. v. Director of Division of Taxation*, 350 U.S. 492, 493–94, 76 S.Ct. 534, 535, 100 L.Ed. 634, 637 (1956) (per curiam). Thus, direct taxes on income and indirect taxes, such as excise taxes, are afforded very different treatment under both federal tax law and the tax law of Indiana.

■ FWNC claims that the FIT is a direct tax on its federal and municipal bonds issued after March 11, 1959 and before January 1, 1990, as well as the income from those bonds, and that the application of the FIT to those bonds is an impermissible, "retroactive" tax. The Department, on the other hand, argues that the FIT does not tax the bonds; rather, the FIT is an excise that taxes a financial institution's privilege of conducting business in Indiana. The FIT itself reads as follows:

> There is imposed on each taxpayer *a franchise tax measured by the taxpayer's adjusted gross income or apportioned income for the privilege of exercising its franchise or the corporate privilege of transacting the business of a financial institution in Indiana.*

IND.CODE ANN. § 6–5.5–2–1(a) (West Supp. 1994) (emphasis added). The statute determines the amount of the tax for the taxable year by multiplying eight and one-half percent (8.5%) times the remainder of

(1) the taxpayer's adjusted gross income or apportioned income; minus

(2) the taxpayer's deductible Indiana net operating losses as determined under this section; minus

(3) the taxpayer's net capital losses minus the taxpayer's net capital gains ... multiplied by the apportionment percentage ap-

plicable to the taxpayer ... for the taxable year of the loss.

*Id.* Thus, the basis of this particular tax reflects the extent to which a financial institution enjoys the privilege of operating as a financial institution in Indiana. If this tax were truly a direct property tax, it would be imposed regardless of whether the taxpayer realized net returns or not. *Storen*, 212 Ind. at 358, 7 N.E.2d at 947. If this tax were a direct tax on appellant's bonds and their income, the fact that the taxpayer was coincidentally exercising its corporate privilege in Indiana would also be irrelevant.

In determining the nature of any state tax, "the declaration in a statute that the tax is of a particular nature, while not conclusive, is very important and must be given consideration in construing the statute." *Lutz*, 208 Ind. at 490, 193 N.E. at 844. The nature of the FIT is not to be assumed; rather, it must be supported. FWNC appears to claim that the economic effect of counting the bond income in the FIT calculation is the same as eliminating an exemption from direct taxation, and therefore, we should treat the FIT as a direct tax on the bonds themselves. While the economic effect may be similar in that FWNC's total liabilities have increased as a result of the new tax regime, the law clearly distinguishes between the elimination of an incidental tax benefit and the actual imposition of a new tax. An additional claim is made that the FIT somehow inherited treatment as a direct tax from some of the various taxes it supplanted. Neither one of these claims, however, suffices to convince us that the FIT is anything other than an excise tax upon the privilege of operating as a corporate financial institution in the state of Indiana. Given past jurisprudence, the plain language of the statute, and its non-discriminatory formula for calculating the individual's tax liability, the FIT is not a direct tax on the federal and municipal bonds, but rather an excise tax on the exercise of the corporate privilege of operating as a financial institution in Indiana.

## II. The Scope of the General Exemption Statute (GES)

■ FWNC contends that the General Exemption Statute prevents the Legislature

from using income from federal municipal bonds issued after March 11, 1959 and prior to January 1, 1990 in the determination of its tax liability under the FIT.[5] The Department argues that the Legislature intended the GES to apply to only income and property taxes on the bonds and therefore does not preclude the State from including FWNC's bonds and the income from those bonds in the determination of its tax liability under the FIT. Thus, the scope of the GES is at issue.

In construing the GES, the first focus is upon the statutory language itself. The GES, as written when FWNC's municipal bonds were issued, reads as follows:

All bonds issued after March 11, 1959, ... issued in the state of Indiana by or in the name of any county, township, city, incorporated town, school corporation, state educational institution or state supported institution of higher learning, or any other political, municipal, public, or quasi-public corporation or body ..., the interest thereon, the proceeds received by a holder from the sale of such obligations to the extent of the holder's cost of acquisition, or proceeds received upon redemption prior to maturity, or proceeds received at maturity, and the receipt of such interest and proceeds, shall be exempt from taxation in the state of Indiana for all purposes except the state inheritance tax.

In 1990, the Legislature amended the GES to explicitly except the FIT from its purview. IND.CODE ANN. § 6-8-5-1 (West Supp.1994). FWNC argues that the addition of this amendment shows that the Legislature originally intended the GES to exempt federal and municipal bonds from the calculation of the FIT. Additionally, FWNC claims that the phrases "and the receipt of such interest and proceeds" and "for all purposes" indicate that the Legislature intended to exempt the municipal bonds from *all* state taxation, di-

rect or indirect. The Department, on the other hand, argues that the amendment merely served to clarify the Legislature's true intention that the GES was only intended to apply to direct taxes. It also argues in the alternative that interpreting the GES to apply to the FIT would contradict the FIT's clear language that interest from both federal and municipal bonds be included in the calculation.[6]

■ The primary task when construing statutes is to determine and implement the intent of the Legislature. *Superior Const. Co. v. Carr* (1990), Ind., 564 N.E.2d 281. Tax exemption statutes must be construed strictly against the one claiming the exemption. *Gross Income Tax Division v. National Bank & Trust Co.* (1948), 226 Ind. 293, 79 N.E.2d 651. The first guide in determining the intent of the Legislature is the language of the statute itself. *State ex rel. Roberts v. Graham et al.* (1953), 231 Ind. 680, 110 N.E.2d 855. When harmonizing two ostensibly conflicting statutes, the law has held that "[w]here there is a conflict between statutes, the more recent statute is controlling and a specific provision prevails over a general provision relating to the same subject matter." *Houtchens v. Lane* (1965), 246 Ind. 540, 545–46, 206 N.E.2d 131, 134, *reh'g denied.*

It is evident that the Legislature never intended the GES to preclude using tax exempt bond income from the calculation of the FIT. Only by a crabbed reading of the statute might one read the statute to entail that the Legislature not only intended to exempt the bonds and their income from all state taxation, direct or indirect, but also to exempt the bonds from any *federal* taxation, direct or indirect. Taken to its logical conclusion, such an interpretation would lead to the absurdity that the State was somehow "promising" exemptions that were not in its power to give. We do not believe the Legis-

---

5.  31 U.S.C. § 3124(a) is incorporated into the GES by IND.CODE ANN. § 6-5.5-1-2(a)(1) (West Supp.1994).

6.  For the purposes of the FIT, IND.CODE ANN. § 6-5.5-1-2 (West Supp.1994) defines adjusted gross income as "taxable income as defined in Section 63 of the Internal Revenue Code, adjusted as follows:

(a)(8) Add the amount of interest excluded under Section 103 of the Internal Revenue Code or under any other federal law, minus the associated expenses disallowed in the computation of taxable income under Section 265 of the Internal Revenue Code."

lature ever intended such an interpretation. As we have stated in the past,

> a statute must be reasonably and fairly interpreted so as to give it efficient operation, and to give effect if possible to the expressed intent of the legislature. It should not be wantonly narrowed, limited or emasculated and rendered ineffective, absurd or nugatory.

*State v. Griffin* (1948), 226 Ind. 279, 284, 79 N.E.2d 537, 540. Additionally, in spite of FWNC's assertion that the "the receipt of such interest and proceeds" phrase demonstrates a legislative intent to apply the GES to indirect taxes such as the FIT, we believe that such a construction is precisely the kind of mistake to be avoided in construing a statute. FWNC's claims of "retroactivity" lack force and support when one considers both the nature of the FIT and a reasonable interpretation of the GES. As we construe the statutes, the FIT only uses current bond income to measure the taxpayer's liability. Because the tax is levied on the franchise and not the bonds and their income, there is no retroactivity. Therefore, we hold the only reasonable harmonization of the two statutes is that the GES must read to only exempt the bonds from *direct* taxation, and not from the FIT.

### III. 31 U.S.C. § 3124

■ FWNC also claimed in the Tax Court that the inclusion of its bonds in the FIT calculation would violate 31 U.S.C. § 3124 by imposing a discriminatory tax against its federal bond income.[7] There is no discrimination here. The United States Supreme Court has clearly stated that a state "does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Washington v. United States*, 460 U.S. 536, 544–45, 103 S.Ct. 1344, 1350, 75 L.Ed.2d 264, 272 (1983). As § 3124 allows, both Indiana municipal bonds and federal

bonds are included in the calculation of the taxpayer's liability under the FIT. Thus, the holder of the federal bonds is in no worse a position than the holder of Indiana municipal bonds. Even before the passage of § 3124, the United States Supreme Court held that a non-discriminatory franchise tax may include federal bonds in the determination of a taxpayer's corporate franchise tax liability. *See Pacific Co. v. Johnson*, 285 U.S. 480, 52 S.Ct. 424, 76 L.Ed. 893 (1932); *Werner Co. v. Director of Taxation*, 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956); *American Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1982), *reh'g denied* 463 U.S. 1250, 104 S.Ct. 39, 77 L.Ed.2d 1457 (1983). Both state and federal bonds are treated exactly alike under the FIT. They are used to determine the extent of the taxpayer's exercise of the privilege of doing business as a financial institution in Indiana.

### IV. The Contract Clause Claim

■ FWNC also claims that the inclusion of municipal bond income in the FIT calculation would constitute an unconstitutional impairment of a contract violating art. 1, § 10 of the United States Constitution and that such an impairment is actionable under 42 U.S.C. § 1983.

We must determine in what sense, if any, a contract was created by between the State and the taxpayer and what were the precise terms of this contract. FWNC seems to claim that the GES, as it interprets the statute, was incorporated into the terms of the bonds at the time of issue. As we have noted in the past,

> [t]he intent of the legislature to enter into a contract with an artificial body of its creation ought to be apparent from the law which is alleged to constitute the contractual obligation. When that law is a special act addressed to a particular group of incorporators to meet a specific need or purpose the intent to contract is more easily

---

**7.** 31 U.S.C. § 3124 (1988) provides in pertinent part:
(a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obli-

gation, or both, to be considered in computing a tax, except—
(1) a non-discriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation;  and
(2) an estate or inheritance tax.

discerned than when the law is general, addressed to no one in particular but available to all of a class as a vehicle for incorporation so long as it stands unrepealed.

*Grand Lodge Hall Ass'n v. Moore* (1945) 224 Ind. 575, 579, 70 N.E.2d 19, 20, *cert. denied,* 330 U.S. 808, 67 S.Ct. 1088, 91 L.Ed. 1265; 331 U.S. 864, 67 S.Ct. 1201, 91 L.Ed. 1869. In that same opinion, this Court cited a quote from Justice Holmes that guides our decision today:

> The broad ground in a case like this is that, in view of the subject-matter, the legislature is not making promises, but framing a scheme of public revenue and public improvement. *In announcing its policy, and providing for carrying it out, it may open a chance for benefits to those who comply with its conditions, but it does not address them, and therefor(e), it makes no promise to them. It simply indicates a course of conduct to be pursued until circumstances or its views of policy change.*

*Id.,* 224 Ind. at 581, 70 N.E.2d at 21, quoting *Wisconsin & Michigan R. Co. v. Powers,* 191 U.S. 379, 387, 24 S.Ct. 107, 108, 48 L.Ed. 229, 231 (1903) (emphasis added). The language of the GES contains neither a promise that the exemption from direct taxation on the bonds would not be repealed or subject to modification for perpetuity, nor a promise that the GES would exempt bonds from even being used to measure a franchise tax, such as the FIT. Even if the GES was incorporated into the bond contract, it would not have prevented the Legislature from using the bond income to measure the FIT liability. The bonds and their income are still exempt from direct state taxes. The promise contained in those bonds was the promise of a given return as a percentage of their purchase price. Thus, the use of the federal and municipal bond income to measure the taxpayer's FIT liability was not an unconstitutional impairment of a state obligation.

### Conclusion

We grant the Department of Revenue's petition for review, vacate the judgment of the Tax Court, and affirm the Department's denial of the refund.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., did not participate in this case.