SUABEDISSEN-WITTNER DAIRY, INC. *v.* DEPARTMENT OF
TREASURY OF INDIANA.

[No. 15,850.  Filed October 21, 1938.]

*Walter R. Arnold,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, *Omer S. Jackson,*
Attorney-General, *Joseph P. McNamara* and *Joseph W.
Hutchinson,* Deputy Attorneys-General, for appellee.

LAYMON, J.—Appellant, during the year 1933, was
engaged in the business of handling and distributing

dairy products, particularly whole milk and butter, in the cities of South Bend and Mishawaka, Indiana, and surrounding territory.

By this action appellant sought a declaratory judgment construing the provisions of the Gross Income Tax Act of 1933 (Acts 1933, ch. 50, p. 388, §64-2601 et seq. Burns 1933, §§15981 et seq. Baldwin's 1934) as applicable to the business in which it was then engaged and fixing the rate at which it was liable to be taxed under the provisions of said act. The issues, formed by the complaint, which was in one paragraph, and an answer in general denial, were submitted to the court upon an agreed stipulation of facts.

The facts, so far as pertinent here, are: That appellant, an Indiana corporation, "pursuant to the ordinance of the city of South Bend, Indiana, . . . put through a process of pasteurization all milk sold for consumption, whether at wholesale or retail; that it purchases such milk from the producers in its raw state and the pasteurization process consists of placing the milk in vacuums and heating it to a specified number of degrees as required by the State Board of Health and then rapidly cooling it; the heating raising the temperature to not less than 142° Fahrenheit, holding at that temperature for not less than 30 minutes or by heating it to 165° Fahrenheit for 30 seconds, and thereafter the same is rapidly cooled and placed in bottles and other containers from one-half pint to four quarts; . . . that from the 1st day of May, 1933, to and including the 31st day of December, 1933, the plaintiff [appellant] sold, delivered and received payment for a total of $70,587.41 for such products sold and delivered at retail, to wit: Less than 10 quarts at each delivery, and delivered to persons who directly consume the same, and during said period sold and delivered at wholesale, including sales to restaurants, hotels, cafeterias, commissaries, and groceries for

the purpose of re-sale $29,093.97 worth of such products; . . . that all but approximately 10 per cent of said sales, both wholesale and retail, were delivered by the plaintiff's [appellant's] transportation facilities, principally automobile trucks, to the purchaser, the other 10 per cent being called for at the plaintiff's [appellant's] plant in the city of South Bend, and that portion of the sales constituting retail sales were made from wagons by house to house deliveries direct to the consumer and with the exception of a few instances regularly every night and morning."

Upon these facts the trial court adjudged and decreed that $70,587.41 of appellant's gross income derived from its retail sales was subject to a tax of one per cent, over and above an exemption of $666.67, for such period, and that $29,093.97 of its income derived from wholesale sales was subject to a tax of one-fourth of one per cent.

It is that part of appellant's income which was subjected by the judgment of the trial court to the rate of one per cent that forms the basis of the controversy in this appeal. Appellant contends that this part of its gross income was derived from its sales of the products by it so pasteurized, compounded, processed, and prepared for sale and is taxable at the rate of one-fourth of one per cent, falling within section 3 (a) of the act [§64-2603 (a) Burns 1933, §15983 (a) Baldwin's 1934], which, so far as material here, provides: "Sec. 3. The tax hereby provided for shall be imposed at the following rates: (a) Upon the entire gross income of every person engaged in the business of manufacturing, compounding, or preparing for sale, profit, or use, any article or articles, substance or substances, commodity or commodities; . . . one-fourth of one per cent."

Appellee has pointed out that from the stipulation of facts it appears that the income forming the basis of the controversy was designated as being from a "retail"

source, and that such a designation was proper since it further appeared that the transactions from which the income accrued were sales of milk in small quantities directly to the ultimate user or consumer thereof. Appellee insists that the gross income having been received from a transaction fundamentally retail in its nature, it matters little whether or not the goods so sold at retail were of appellant's manufacture.

This court and our Supreme Court have had before them the construction of the provisions of section 3 of the act and the application of the rates as provided for by the subdivisions of said section, and it has been consistently held that section 3, and the sub-sections thereof, classifying income derived from different businesses, should receive a practical and a workable construction.

The fact that the gross income of appellant which forms the basis of this appeal was directly derived from retail sales is not in dispute; nor does appellant deny such fact, but contends that it is engaged in the business of preparing for sale a certain commodity; that such a business is classified under section 3 (a) of the act as having a gross income tax rate of one-fourth of one per cent, "and it matters not that these commodities which are prepared for sale by it are sold to retailers by way of house to house deliveries."

If we should accept appellant's contention that the process of pasteurization came within the meaning of the phrase "preparing for sale, profit, or use," we would be compelled to construe this phrase of the act separately and apart from the words "manufactured" and "compounded" with which it is associated in forming a singular classification for taxation. In construing the phrase "preparing for sale" together with its associated terms, "manufacturing" and "compounding" as used in the same section of the act, we

think that the Legislature intended this phrase to partake of the same or of a similar character as the words "manufacturing" or "compounding." This being true, we do not think that the income of appellant, the tax upon which is here in question, is derived from a business within the meaning of the words "engaged in the business of manufacturing, compounding, or preparing for sale, profit, or use, any article or articles, substance or substances, commodity or commodities."

Conceding that appellant was engaged in a business properly classified under section 3 (a) of the act, nevertheless that part of the income which is derived from retail sales would be subject to the rate of tax imposed by section 3 (c) of the act. In *Storen et al.* v. *J. D. Adams Mfg. Co.* (1937), 212 Ind. 343, 7 N. E. (2d) 941, and in *Dept. of Treasury of Indiana et al.* v. *J. P. Michael Co.*, ante 255, 11 N. E. (2d) 512, it was held that the basic tax upon taxpayers generally is one per cent. The Supreme Court and our court said (p. 348) : "The rate does not depend upon the business in which the taxpayer is primarily engaged, but upon the activity from which each item of his gross income is received. Sales to ultimate consumers must be regarded as retail sales, whether made by the producer of the article sold or another."

In the case of *Storen et al.* v. *J. D. Adams Mfg. Co.*, *supra*, the appellee was an Indiana corporation engaged in manufacturing machinery, tools, etc., selling a portion of its products to the ultimate user or consumer. One of the questions presented was (p. 346) : "Is that part of appellee's gross income, which is derived from sales of appellee's products to ultimate users, taxable at one per cent, the rate which applies to those engaged in the business of retailing, or at one-fourth of one per cent, the rate which applies to those engaged in the business of manufacturing?" The appellee contended that those

engaged in manufacturing are, under the statute, taxable at the rate of one-fourth of one per cent only, regardless of whether their sales are to jobbers, wholesalers, or are retailed direct to the consumer. The court said (p. 347):

"If this position can be sustained, it means that manufacturers, who operate exclusively through retail stores or stations and compete with retailers in the ordinary sense, have a discriminatory advantage by reason of the fact of manufacturing their own product. The goods sold by the ordinary retailer come down to him through a manufacturer, a jobber, and a wholesaler, and are burdened with one-fourth of one per cent tax upon the manufacturer, the jobber, and the wholesaler, and one per cent upon the retailer, a total of one and three-fourths per cent, while his competing retailer, who manufactures his own product, would pay but one-fourth of one per cent. There is nothing in the act which indicates a legislative design and intention to create such a discriminatory situation. The basic tax upon taxpayers generally is one per cent. Section 4 (Burns' Ann. St. 1933, §64-2604) recognizes that the same person or corporation may be taxable upon different parts of his income at different rates, and provides that each person shall be subject to taxation at the highest rate applicable to any part of his gross income unless he shall segregate the parts subject to different rates. Some reason can be seen for taxing manufacturers, jobbers, and wholesalers at a lower rate, since their merchandise moves in larger quantities and in greater price competition, and since the articles manufactured and sold by them must be ultimately burdened with successive taxes. A manufacturer, as the term is commonly understood, is one who processes raw material 'and stands between the original producer and the dealer.' *Indiana Creosoting Co.* v. *McNutt, Governor, et al.* (1936), 210 Ind. 656, 5 N. E. (2d) 310, 314.

"The question of whether there would be a sufficient constitutional basis for classification and discrimination between those who manufacture their own merchandise, and other retailers, need not be considered, since no legislative intention to so dis-

criminate is apparent, and a reasonable interpretation of the act precludes such a conclusion."

We conclude that that part of appellant's income in controversy was properly taxed under section 3 (c) at the rate of one per cent. Judgment affirmed.