INDIANA DEPARTMENT OF STATE REVENUE *v.* STARK-WETZEL & CO., INC.

[No. 1071A203. Filed December 22, 1971. Rehearing denied January 24, 1972. Transfer denied May 1, 1972.]

*Theodore L. Sendak,* Attorney General, *Hugh Couch, Larry J. McKinney, Mark Peden,* Deputies Attorney General, for appellant.

*Theodore D. Nering, III, Philip S. Kappes, Dutton, Kappes & Overman,* of Indianapolis, for appellee.

SHARP, J.—This is an appeal from a judgment under the Indiana Gross Income Tax Act ordering a refund of taxes to the Appellee, Stark-Wetzel & Co., Inc. The sole issue before the trial court was the correct interpretation of § 1 (s) of the Indiana Gross Income Tax Act which is Ind. Ann. Stat. § 64-2601 (s) (Burns 1961), I.C. 1971, 6-2-1-1 which reads as follows:

> "In the case of wholesale grocers who are engaged in the business of selling stocks of groceries, tobacco products and expendable household supplies, gross income shall be deemed to mean the gross earnings, computed upon an annual basis,

which are derived from wholesale sales of stocks of groceries, tobacco products and expendable household supplies to retail food establishments, and such wholesale grocers shall be subject to the rate of taxation as prescribed in section 3(f) [§ 64-2603(f)] of chapter 50 of the Acts of the Indiana general assembly of 1933, as the same has been amended: Provided, That for the purpose of this subsection only gross earnings shall be construed to mean the gross receipts derived from the sale at wholesale of stocks of groceries, tobacco products and expendable household supplies which are customarily sold through retail food establishments, less the cost of the stocks of groceries, tobacco products and expendable household supplies sold during such period, without any deductions of any other kind or character."

Ind. Ann. Stat. § 64-2603 (f) (Burns 1961), I.C. 1971, 6-2-1-3 (f) also provides:

"With respect to that part of the gross income of every person received from operating any bank, trust company, building and loan association, insurance and/or casualty company, finance company, small loan company, or any other business of similar nature, including all others mentioned in subsection (n) of section 1 [§ 64-2601], the tax shall be equal to two [2%] percent of such part of the gross income."

The issue to be decided here is whether the Appellee, Stark-Wetzel & Co., Inc., is liable under the Indiana Gross Income Tax of 1933 as amended at the rate of ½% of gross income, applicable to wholesalers, or is liable at the rate of 2% of gross earnings, the same as wholesale grocers who are engaged in the business of "selling stocks of groceries, tobacco products and expendable household supplies . . . . to retail food establishments." The Appellant, Indiana Department of State Revenue, contends that Stark-Wetzel & Co., Inc., is not a wholesale grocer and is liable at the rate of ½% of gross income and Stark-Wetzel & Co., Inc., contends that as far as the sales here in issue are concerned, it is a wholesale grocer and is liable on such sales at the rate of 2% of gross earnings. In its complaint filed on April 26, 1969, the Ap-

pellee, Stark-Wetzel & Co., Inc., made claim for certain taxes paid for the taxable years 1965, 1966 and 1967. The trial court on March 15, 1971, entered its findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

1. Plaintiff is an Indiana corporation, defendant is the proper party defendant and subject to suit for refund of taxes, all things necessary to be done as a prerequisite to such a suit have been done, and the Court has jurisdiction over the parties and the subject matter of this action.

2. The sales made by plaintiff during 1965, 1966 and 1967 which have been segregated and referred to in a stipulation entered into by plaintiff and defendant were sales at wholesale to retail food establishments.

3. Such sales were sales of stocks of groceries within the meaning of the word "groceries" as used in subsection (s) of Section 1 of the Gross Income Tax Act.

4. As to that portion of the sales of plaintiff for which claim for refund was filed, plaintiff was in 1965, 1966 and 1967 a wholesale grocer within the meaning of Section 1 (s) of the Gross Income Tax Act.

5. The stipulation entered into by the parties which was appended as Exhibit "A" to the "Report to the Court on Conference of Attorneys" on June 24, 1970, and which was approved by the Court in its pre-trial entry on August 6, 1970, correctly calculates the amount of refund of taxes to which plaintiff is entitled.

6. The facts stated in plaintiff's complaint are true.

7. There is now due plaintiff from defendant the sum of $175,911 plus interest at the rate of 6% per annum from the date of overpayment, the sum of $188,586 plus interest at the rate of 6% per annum from the date of overpayment, the sum of $199,609 plus interest at the rate of 6% per annum from the date of overpayment.

## CONCLUSIONS OF LAW

1. The law is with the plaintiff and against the defendant.

2. The Gross Income Tax levied and collected by the State of Indiana (on those certain sales which have been segregated and referred to in a stipulation

entered into by plaintiff and defendant) should have been by and pursuant to the provisions of Section 1 (s) of the Gross Income Tax Act of 1933 as amended.

3. The last four sentences of paragraph two of Instruction 4-154 of Gross Income Tax Regulations do not correctly state the meaning of Subsection 1 (s) of the Gross Income Tax Act of 1933, as amended.

4. The Gross Income Tax levied and collected upon those certain sales upon which plaintiff's claim for refund was based was wrongful and illegal for the reason that it was contrary to Section 1 (s) of the Gross Income Tax Act of 1933, as amended.

5. Plaintiff is entitled to a judgment against defendant in the amount of $175,911 together with interest at 6% per annum from the date of overpayment: $188,586 together with interest at 6% per annum from the date of overpayment: and $199,609 together with interest at 6% per annum from the date of overpayment.

On the basis of the foregoing findings of fact and conclusions of law, the trial court entered its judgment on behalf of the Appellee. The motion to correct errors of the Indiana Department of State Revenue was overruled and such is the sole assignment of error here.

There is an abundance of evidence in the transcript and referred to in the briefs which pertains to the economic facts of life for the meat-packing industry in general and the Stark-Wetzel & Co., Inc., in particular over the last twenty years. The essential questions are whether or not during the 1965-67 period Stark-Wetzel & Co., Inc., was a "wholesale grocer" and sold "stocks of groceries" as those terms appear in the relevant provisions of the statute in question. Considering the evidence in the light most favorable to the decision of the trial court, we find that there is substantial evidence of probative value to support each and all of the findings of fact made by the trial court. The essential question, therefore, is whether or not the trial court reached correct conclusions of law based upon such findings of fact.

The Revenue Department asserts that the taxpayer was

not a "wholesale grocer" because it engaged in the manufacturing and processing of meat and meat products and that such manufacturing and processing of meat and meat products was a substantial percentage of its total business. The Revenue Department appears to argue that given the overall nature of the Appellee's business of manufacturing and processing meat and meat products, no other part of its sales, regardless of their nature, could qualify as a sales of a "wholesale grocer." Witnesses on behalf of the Department of State Revenue testified that a wholesale grocer might well also engage in manufacturing and processing. The fact that a large percentage of the Appellee-taxpayer's business involves meat does not in itself preclude the taxpayer from being a "wholesale grocer." Meat is within the general classification of groceries and may be one of the types of products sold by a "wholesale grocer." As one witness on behalf of the Indiana Department of State Revenue stated, "There is no wholesale grocer in the world who handles all conceivable kinds of groceries. It would by physically impossible." Each wholesale grocer may place emphasis on that portion of its product line where it believes it has strength or advantage. It is obvious from the evidence that the Appellee-taxpayer had strength and advantage in meat, meat products and frozen food areas and has concentrated in these areas. These facts standing alone certainly do not preclude the taxpayer from being a "wholesale grocer."

The Department of State Revenue argues that the taxpayer is mainly engaged in manufacture and therefore, cannot be for any part of its business a "wholesale grocer" under the cited provisions of the Indiana Gross Income Tax Act.

Under the Indiana Gross Income Tax Act, the general character of the taxpayer is not, in itself, controlling. A single taxpayer may receive part of its income from manufacturing, part of its income from wholesaling and part of its income from retailing. Under the Indiana Gross Income Tax Act, all income will be taxed at

the highest applicable rate unless the taxpayer segregates the sources of its income. If such segregation exists (as it does in this case), then three different rates may apply. Early in the history of the Indiana Gross Income Tax Act, our Supreme Court in *Storen* v. *J. D. Adams Manufacturing Co.,* 212 Ind. 342, 7 N. E. 2d 941 (1937) said:

> "It is appellee's contention that sale is an indispensable incident to the business of manufacturing, and that whether a person is engaged in manufacturing is not determined by the manner in which he sells his goods, and that those engaged in manufacturing are, under the statute, taxable at the rate of one-fourth of one percent, only, regardless of whether their sales are to jobbers, wholesalers, or at retail directly to the consumer. If this position can be sustained, it means that manufacturers, who operate exclusively through retail stores or stations and compete with retailers in the ordinary sense, have a discriminatory advantage by reason of the fact of manufacturing their own product. The goods sold by the ordinary retailer come down to him through a manufacturer, a jobber, and a wholesaler, and are burdened with one-fourth of one per cent tax upon the manufacturer, the jobber, and the wholesaler, and one per cent upon the retailer, a total of one and three-fourths per cent, while his competing retailer, who manufactures his own product, would pay but one-fourth of one per cent. There is nothing in the act which indicates a legislative design and intention to create such a discriminatory situation. The basic tax upon taxpayers generally is one per cent. Section 4 (Burns' Ann. St. 1933, § 64-2604) recognizes that the same person or corporation may be taxable upon different parts of his income at different rates, and provides that each person shall be subject to taxation at the highest rate applicable to any part of his gross income unless he shall segregate the parts subject to different rates. Some reason can be seen for taxing manufacturers, jobbers, and wholesalers at a lower rate, since their merchandise moves in larger quantities and in greater price competition, and since the articles manufactured and sold by them must be ultimately burdened with successive taxes.

> \* \* \* \* \*

> *"The rate does not depend upon the business in which the taxpayer is primarily engaged, but upon the activity from which each item of his gross income is received.* Sales

to ultimate consumers must be regarded as retail sales, whether made by the producer of the article sold or another." (Emphasis added)

For the same reasoning and result, see also *Department of Treasury* v. *J. P. Michael Co.*, 105 Ind. App. 258, 11 N. E. 2d 512 (1937), *Department of Treasury* v. *Jackson*, 105 Ind. App. 630, 11 N. E. 2d 514 (1937), *Suabedissen-Wittner Dairy* v. *Department of Treasury*, 105 Ind. App. 626, 16 N. E. 2d 964 (1938) and *Oster* v. *Department of Treasury*, 219 Ind. App. 313, 33 N. E. 2d 799 (1941), reversed on other grounds, 219 Ind. 313, 37 N. E. 2d 528.

It is clear in this case that the Appellee-taxpayer received the income here in issue from selling stocks of groceries at wholesale to retail food establishments. The taxpayer so segregated the parts of his income which were subject to different rates of taxation. The taxpayer excluded interstate, manufacturing and retail sales and excluded wholesale sales of non-grocery items and wholesale sales of grocery items to non-retail food establishments. It was only the sales of stocks of groceries at wholesale to retail food establishments which were included in a stipulation entered into by the parties which stipulation was approved by the Trial Court at a pre-trial conference.

There was substantial testimony including the introduction of many exhibits in regard to the dramatic changes in the marketing of food which related to the increased activities of the Appellee-taxpayer as a "wholesale grocer." The testimony of certain witnesses on behalf of the Indiana Department of State Revenue was in many respects consistent on this question. This evidence is relevant only to a consideration of the factual nature of a "wholesale grocer."

There are a wide variety of dictionary definitions for "groceries." Bouvier's *Law Dictionary* (Rawle ed. 1914) pages 1382 and 2760 defines groceries as "articles of provision" and "food for man; victuals." Webster's *New International Dictionary of the English Language* (2nd ed. 1945)

defines groceries as "tea, sugar, spices, coffee, fruits, and various other commodities chiefly foodstuffs . . . food, any substance of food value." Webster's *New International Dictionary of the English Language* (3rd ed. 1963) page 1001 defines groceries as "articles of food . . . staple foodstuffs (as coffee, sugar, flour) and usu. meats and other foods as fruits, vegetables, and dairy products."

Without belaboring the point greatly, it is clear that meat may be included within the meaning of "stocks of groceries" as referred to in the above statute. In fact, a witness testifying on behalf of the Appellant, Indiana Department of State Revenue, testified that he was aware that wholesale grocers were selling meat as a part of their product line of grocery items as early as 1957, the date of the statute here in question. Two of the Department of State Revenue's witnesses who purported to be expert witnesses as to the nature and extent of activities of wholesale grocers testified that they reported their meat sales as groceries under § 1 (s) of the Indiana Gross Income Tax Act, the same provision here in question. The testimony of the Department of State Revenue's own witnesses was to the effect that meat was included within their own personal understanding of the meaning of the word "groceries."

There is some dispute as to whether or not the term "groceries" or "stocks of groceries" as used in the provision of the statute should be limited to non-perishable items specifically excluding meat. Again, we believe that the intention of the legislature was clear and that the term "groceries" and "stocks of groceries" was intended to be used in its plain, ordinary and usual sense. See Ind. Ann. Stat. § 1-201 (Burns 1967), I.C. 1971, 1-1-4-1. The plain, ordinary and usual meaning could certainly include meat.

The finding of the trial court that the taxpayer sold "stocks of groceries" is supported by substantial evidence and the conclusion of law based thereon is correct.

The Department of State Revenue further argues that in

order for the Appellee to qualify as a wholesale grocer under § 1 (s) of the Indiana Gross Income Act, it must sell *all* three items mentioned in the statute i.e. stocks of groceries, tobacco products and expendable household supplies. The trial court concluded that the Department of State Revenue's construction of the statute was not correct, but that the selling of stocks of groceries was sufficient for the taxpayer to be covered by § 1 (s) and that the word "and" was not used by the General Assembly in a conjunctive sense.

In *Conway's Estate* v. *Klaus,* 72 Ind. App. 303, 120 N. E. 717 (1918) at page 721, this Court stated:

> "It is also a recognized rule of construction that 'and' may be interpreted to mean 'or', and vice versa, where by so doing effect may be given to a statute in harmony with the plain legislative intent as gathered from all the provisions of the enactment.
>
> "This rule is applicable to the case at bar, and we therefore hold that the word 'and' in clause 4, § 1, is used in the sense of 'or'."

In Sutherland, *Statutory Construction* (1971 Supp.) § 4923 it is stated:

> "There has been, however, so great laxity in the use of these terms ('and', 'or') that courts have generally said that the words are interchangeable and that one may be substituted for the other. . . .
>
> "The popular use of 'or' and 'and' is so loose, and so frequently inaccurate, that it has infected statutory enactments. For this reason, their strict meaning is more readily departed from than that of other words. In this respect it is clear that the courts have power to change and will change 'and' to 'or' and vice versa, whenever such conversion is *required by the context,* or is *necessary to harmonize the provisions of a statute and give effect to all its provisions, or to save it from unconstitutionally,* or, in general, *to effect the obvious intention of the legislature."* (emphasis added)

See also *State* v. *Myers,* 146 Ind. 36, 46 N. E. 801 (1896).

The Appellee makes a strong argument that in other related sections of the statute passed at the time as § 1 (s) was

passed, the Department of State Revenue has interpreted the word "and" to mean:

(1) all
(2) either or both
(3) and/or
(4) or

In this regard, the Appellee asserts that in § 1 (q) the statute provides "whole grain and soybeans," and the Department has interpreted the "and" to mean "or" in the caption of its "Instruction 4-153, PURCHASE AND SALE OF WHOLE GRAIN OR SOYBEANS BY GRAIN HANDLERS" as well as in the text of that Instruction. In § 1 (r) the statute reads "whole grain and soybeans," and the Department's Instruction interprets the "and" to mean "or" or "and/or," and in the caption of the Department's "Instruction 4-152, PURCHASE AND SALE OF WHOLE GRAIN OR SOYBEANS UNDER PRICES FIXED BY THE FEDERAL GOVERNMENT."

However, in its Instruction on § 1 (s) which reads "groceries, tobacco products, and expendable household supplies" the Department's Instruction provides that the "and" really means "all." In § 1 (s) the legislature was attempting to describe the function of wholesale grocers as well as the farthest reach or extent of their covered product line so that it would be possible to determine objectively the group upon which gross earnings tax is to be imposed. The function to which the statute addresses itself is selling, and the product categories enumerated are descriptive or illustrative. The gross earnings tax may be paid if one sells stocks of any specified category, namely, (1) groceries, (2) groceries and tobacco products, (3) groceries, tobacco products and expendable household supplies, or (4) groceries and expendable household supplies. To conclude otherwise would be to require an absurd result, that is, that a wholesale grocer of stocks of groceries would pay tax on his gross receipts while a wholesale grocer of the three items, groceries,

tobacco products and expendable household supplies, would pay tax on his gross earnings. Thus, vendors of "stocks of groceries" who obviously compete with one another and sell the same products to the same customers and perform the same economic function in the marketplace would be treated differently for tax purposes. Such a distinction is offensive to intelligent statutory construction. Yet, the Department's Instruction 4-154 as referred to in the trial court's conclusions of law would reach precisely such a conclusion although there is no indication of a legislative intent to use the taxing power to restructure the marketplace of this particular industry, i.e. requiring that wholesale grocers must handle all categories. The legislative intent here is focused on the inequity of the tax, the desire to lessen that inequity and place out-of-state wholesalers, chain wholesalers and Indiana based wholesalers on a more equal footing. The enumeration of categories of products was not for the purpose of limiting the benefited parties. Rather, the enumeration of categories was to permit wholesale grocers to get the benefit of the tax for their tobacco and household products sales as well as groceries, but there was no requirement that they *must* sell all three. It is elementary that we must examine all parts of the same act together and construe and interpret a statute in such a way to promote harmony and consistency. See *State* v. *Myers*, *supra*. The last word on statutory construction in Indiana, in a case involving the interpretation of this same statute, this Court, speaking through Judge Buchanan, in *Indiana Department of State Revenue* v. *Boswell Oil Company*, 148 Ind. App. 569, 268 N. E. 2d 303, 305 (1971) stated:

> "We recognize that the courts of this state have taken opposing views as to construction of taxation statutes. In the case of exemptions from tax statutes, we have consistently held that statutes will be strictly construed against the party claiming the exemption. *Gross Income Tax Division* v. *National Bank & Trust Co.* (1948), 226 Ind. 293, 79 N. E. 2d 651. It has also been consistently held, however, that in case of doubt as to the meaning or applicability of the Indiana Gross Income Tax

Act (the Act), it will be construed against the state in favor of the taxpayer. *Gross Income Tax Division* v. *L. S. Ayres & Co.* (1954), 233 Ind. 194, 118 N. E. 2d 480; *Gross Income Tax Division* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N. E. 2d 415. In the case under consideration, we are not concerned with an exemption from the Act, and therefore we feel bound to resolve any doubts against the state and for the taxpayer."

In this case, the trial court's special findings of fact were based upon substantial evidence and its conclusions of law based on such findings of fact were legally correct.

Therefore, the judgment of the trial court should be and hereby is affirmed.

Hoffman, C. J., Staton and White, JJ., concur.

NOTE.—Reported in 276 N. E. 2d 904.