**INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant),**

v.

**BEST EVER COMPANIES, INC., Appellee (Plaintiff).**

No. 2–785–A–211.

Court of Appeals of Indiana, Second District.

July 30, 1986.

Linley E. Pearson, Atty. Gen., Dan S. Larue, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellant.

Daniel S. Davisson, Ted R. Habermann, Davisson & Davisson, Anderson, for appellee.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Defendant-appellant Indiana Department of State Revenue (Department) appeals from a judgment under the Indiana Gross Income Tax Act[1] [hereinafter cited as the Act] ordering a refund of taxes to plaintiff-appellee, Best Ever Companies, Inc. (Best Ever), claiming the trial court erred in concluding that Best Ever, a dairy processor and marketing company, qualified for favorable treatment as a "wholesale grocer."

We affirm.

1. Ind.Code 6–2–1–1 to –1–53 (1976) (current version at IC 6–2.1–1–1 to –8–10 (1982)).

## FACTS

The facts most favorable to the trial court's judgment indicate that Best Ever operated a licensed dairy in Anderson, Indiana, processing raw milk into homogenized milk and other dairy products. Best Ever sold its products to retail food establishments and institutions in and around Anderson. Between sixty and seventy per cent of Best Ever's sales were of homogenized milk. Best Ever also sold buttermilk, cottage cheese, half-and-half, ice cream, and chocolate milk. Approximately eighty per cent of its total sales were to retail food establishments such as grocery stores, restaurants, and cafeterias.

Prior to 1982, Best Ever calculated its gross income taxes using the gross receipts method, which applies a low tax rate, but which allows no deductions. In 1982, Best Ever's accountants determined, based on *Indiana Dept. of State Revenue v. Stark-Wetzel & Co.* (1971), 150 Ind.App. 344, 276 N.E.2d 904, *trans. denied*, that Best Ever qualified for favorable treatment as a "wholesale grocer" within the meaning of the Act. The Act allows a wholesale grocer that is "engaged in the business of selling stocks of groceries" to calculate its taxes based on its gross earnings "which are derived from wholesale sales of stocks of groceries ... to retail food establishments." IC 6–2–1–1(s) (current version at IC 6–2.1–1–4). "[W]holesale sales" include "[s]ales of any tangible personal property ... *to a purchaser who purchases the same for the purpose of reselling it in the form in which it is sold to him.*" IC 6–2–1–3(a)(1) (current version at IC 6–2.1–2–1(c)(1)(A)) (emphasis supplied). Because the gross earnings method allows deductions for cost of goods sold and related expenses, a taxpayer's ultimate tax liability using the gross earnings method is often much lower than it would be using the gross receipts method, even though a higher tax rate is applied. Best Ever filed amended tax returns claiming refunds for the years 1978, 1979, and 1980.

After a hearing on June 2, 1982, and a supplemental field audit, the Department issued a Letter of Findings on April 6, 1983, granting refunds for 1978 and 1979, but denying a refund for 1980. The Department explained its decision as follows:

"The Department finds that these taxpayers do not qualify as wholesale grocers. Regulation [45 I.A.C. 1–1–77 (1979)] requires a wholesale grocer to be selling goods in 'substantially [sic] unchanged form.' These dairies despite the fact that they do not produce cheese, ice cream, or other dairy products, are still engaged in manufacturing. When the taxpayers purchase whole milk, it must be separated, homogenized and pasteurized. The whole milk might be processed into skim milk, 2% milk, Vitamin D milk, buttermilk, half and half, or cream. Thus the taxpayer must report its income under the gross receipts method for wholesale sales.

*The requirement of 'substantially [sic] unchanged form' was not included in the Gross Income Tax Regulations until the 1978 version which was effective for tax years beginning in 1979. Thus for the fiscal years ending in 1978 and 1979, the taxpayers will be permitted to use the gross earnings basis.* The taxpayers have filed amended returns for those years showing their calculation of the gross earnings.

Based on these findings, the taxpayers' protest is partially sustained."

*Record* at 115 (emphasis supplied). The regulation referred to in the Letter of Findings provides in pertinent part as follows:

"A 'wholesale grocer' is a taxpayer *engaged in the business of purchasing grocery stocks ... from another for resale in substantively unchanged form to retail food establishments....*

Wholesale grocers whose receipts from the wholesale sale of groceries ... to retail food establishments are no less than five percent (5%) of their total gross receipts are taxable on a gross earnings basis under IC 6–2–1–1(s)."

45 I.A.C. 1–1–77 (citation omitted) (emphasis supplied) [hereinafter cited as the Regulation]. Best Ever filed a claim for refund

for 1980 which the Department denied on November 15, 1983. The Department also denied Best Ever's claims for refunds for subsequent years.

On January 18, 1984, Best Ever filed an appeal in Madison Superior Court. After a bench trial on October 23, 1984, the trial court entered judgment for Best Ever and issued findings of fact and conclusions of law that included the following:

2. The regulation [45 I.A.C. 1-1-77] changed the prior statutory meaning of wholesale grocer as defined by the Indiana Court of Appeals, was legislative in nature, and was beyond the authority granted to the Department of Revenue by Indiana Code 6-1-1-34.

. . . .

5. Best Ever Companies, Inc. is a wholesale grocer as that term is used in Indiana Code 6-2-1-1(s).

6. Best Ever Companies, Inc. is entitled to a refund of Thirty-Eight Thousand One Hundred Fifty-five Dollars ($38,-155) erroneously paid gross income taxes for the year ending August 31, 1980, and for the tax attributable to the income from the sale of milk products to retail food establishments."

*Record* at 888–90. This appeal ensued.

### ISSUE

One issue is dispositive:

Is the Regulation invalid?

### DECISION

*PARTIES' CONTENTIONS*—The Department defends the Regulation as a reasonable interpretation and application of the Act.

Best Ever responds that the Regulation is invalid because it changed the plain meaning of the Act as it has been interpreted by the courts.

*CONCLUSION*—The Regulation is invalid.

The Department does not question Best Ever's status as a "wholesale grocer" under the Act, as evidenced by its Letter of Findings of April 6, 1983, granting Best Ever's claim for refunds for the two years prior to the effective date of the Regulation. Thus, the Department's contention that Best Ever does not qualify for favorable treatment fails if we declare the Regulation invalid, as we must.

■ An administrative agency is a creature of the legislature. Its powers are strictly limited to its authorizing statute. *Van Allen v. State* (1984), Ind.App., 467 N.E.2d 1210.

"An administrative board has the undoubted right to adopt rules and regulations designed to enable it to perform its duties and to effectuate the purposes of the law under which it operates, when such authority is delegated to it by legislative enactment.... But it may not make rules and regulations inconsistent with the statute which it is administering, *it may not by its rules and regulations add to or detract from the law as enacted,* nor may it by rule extend its powers beyond those conferred upon it by law."

*Indiana Dept. of State Revenue v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 479–80, 109 N.E.2d 415, 422–23 (citations omitted) (emphasis supplied). When regulatory powers have been granted and exercised, we may enforce the rules and regulations only as long as they are within the scope of the statute. *Van Allen, supra.*

■ The Department's authorizing statute, IC 6-2-1-34(a) (1976) (current version at IC 6-8.1-3-3(a) (1982)), empowers the director of the Department to promulgate rules and regulations to effectuate the purposes of the state tax laws: "The director shall from time to time promulgate in the manner provided by law such rules and regulations, not inconsistent with this chapter, for making returns and for the ascertainment, assessment and collection of the tax imposed hereunder as he may deem necessary and desirable." The Regulation purports to interpret the statutory mechanism set forth in the Act for the ascertainment of the gross income tax. In so doing, however, the Regulation adds new requirements that exceed the scope of the Act.

Under the pertinent provisions of the Act, a taxpayer that is engaged in the business of selling stocks of groceries may calculate its taxes based on its gross earnings derived from sales of stocks of groceries to a retail food establishment if the *retailer* purchased the grocery stocks for the purpose of reselling them in the form in which it purchased them. IC 6–2–1–1(s), –1–3(a)(1). The Act thus looks to the identity and intentions of the *purchaser* at the moment of the sale to determine the character of the sale and, consequently, the method of calculating the taxpayer's gross income taxes. The Act says nothing about where or how the taxpayer acquired the grocery stocks or what it did with them prior to the sale to a retail food establishment.

In *Stark-Wetzel, supra,* the court upheld the trial court's finding that a meat packer's wholesale meat sales to retail food establishments qualified as sales of a "wholesale grocer" despite the Department's contention that the taxpayer engaged in the manufacturing and processing of meat and meat products. The court quoted the Indiana Supreme Court's opinion in *Storen v. J.D. Adams Mfg. Co.* (1937), 212 Ind. 343, 7 N.E.2d 941, *modified* (1938), 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, as follows:

> "'The rate does not depend upon the business in which the taxpayer is primarily engaged, but upon the activity from which each item of his gross income is received. Sales to ultimate consumers must be regarded as retail sales, whether made by the producer of the article sold or another.' (Emphasis added)."

*Stark-Wetzel, supra,* 150 Ind.App. at 350–51, 276 N.E.2d at 908. *See also Suabedissen-Wittner Dairy v. Department of Treasury* (1938), 105 Ind.App. 626, 16 N.E.2d 964. Because the meat packer had received the income from selling stocks of groceries at wholesale to retail food establishments, the meat packer qualified as a "wholesale grocer" under the Act regard-

less of its manufacturing and processing activities.

Under the Regulation, a taxpayer that qualifies as a "wholesale grocer" under the Act may calculate its taxes using the gross earnings method *only* if it is also "engaged in the business of *purchasing* grocery stocks ... from another for resale *in substantively unchanged form* to retail food establishments." (Emphasis supplied). Thus, the Regulation adds two new requirements for "wholesale grocer" status: first, that the taxpayer purchase grocery stocks; and, second, that it resell the grocery stocks in substantively[2] unchanged form. Nothing in the Act reveals a legislative intent to distinguish between wholesale grocers that manufacture or process the grocery stocks they sell and those that do not. The Department is without legislative authority to make such a distinction. *See Colpaert, supra; Department of State Revenue v. Crown Dev. Co.* (1952), 231 Ind. 449, 109 N.E.2d 426. Consequently, the Regulation is invalid.

Judgment affirmed.

SULLIVAN and SHIELDS, JJ., concur.

---

**2.** In view of our conclusion that the Regulation is not authorized by the governing statutes, the "substantively—substantially" dispute raised by the parties is irrelevant.