ATTORNEYS FOR APPELLANT JEFFREY HEWITT
Jason R. Delk
Daniel J. Gibson
Delk McNally LLP
Muncie, Indiana

ATTORNEYS FOR APPELLEE WESTFIELD WASHINGTON
SCHOOL CORPORATION, et al.
Séamus P. Boyce
Noblesville, Indiana

Brent R. Borg
Kelleigh I. Fagan
Church Church Hittle & Antrim
Fishers, Indiana

ATTORNEY FOR AMICUS CURIAE INDIANA SCHOOL
BOARDS ASSOCIATION
Lisa F. Tanselle
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Dec 15 2015, 3:05 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 29S04-1506-PL-00377

JEFFREY HEWITT,

*Appellant (Plaintiff below),*

v.

WESTFIELD WASHINGTON
SCHOOL CORPORATION, et al.,

*Appellees (Defendants below).*

Appeal from the Hamilton Superior Court, No. 29D01-1202-PL-001050
The Honorable Steven R. Nation, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 29A04-1403-PL-130

**December 15, 2015**

**David, Justice.**

This case involves termination of an elementary school principal after the school board learned that the principal had been involved in a sexual relationship with a teacher, one of his subordinates. At issue is whether the school board provided the principal with appropriate process when it terminated his employment as an administrator. In a case of first impression, we hold that the teacher's termination statute, found at Indiana Code § 20-28-7.5-1 et seq., does not apply to termination of an administrator when his underlying teaching contract is not being terminated. We further hold that the provisions in the form teacher's contract that make reference to an opportunity for hearing and a just cause determination also apply only to the termination of an administrator's underlying teaching contract. Under the facts and circumstances of this case, the principal was given sufficient notice and an opportunity to be heard.

**Facts and Procedural History**

On July 1, 2011, Jeffery Hewitt signed a contract with Westfield Washington School Corporation (Westfield) that provided that he would serve as Principal of Monon Trail Elementary School (MTES). Hewitt's contract was the regular teacher's contract used throughout Indiana, except that the contract was limited to a two-year term and specified that Hewitt would serve as Principal. With regard to termination, the contract provided:

> It is agreed by the parties hereto that in case the said teacher should, after opportunity for hearing with benefit of legal counsel, be held by said employer to be guilty of incompetency, immorality, insubordination or other offense recognized as just cause according to law for cancellation of contract such teacher, subject to proper appeal shall be deemed to be dismissed and shall thereafter hold no claim for further compensation subject, however, to the provisions of law concerning the employment and dismissal of teachers which are in force and effect.

(Appellant's App. at 25.) In addition, the contract included a provision that the parties agree "that all laws governing the employment and dismissal of teachers shall be construed to be a part of this contract." (Id.)

In November of 2011, Hewitt was approached by the Superintendent of Westfield, Mark Keen, who informed Hewitt that there were some concerns with his performance as Principal.

2

Following that meeting, Hewitt met with the Executive Director of Human Resources, Chris Baldwin, who asked Hewitt about rumors that Hewitt was engaged in a sexual relationship with another staff member at MTES. Hewitt admitted to having a sexual relationship with a MTES teacher from February of 2011 until November of 2011.

Due to concerns about the appropriateness of the relationship between a supervisor and subordinate, the School requested Hewitt's resignation. On December 13, 2011, Hewitt tendered his letter of resignation, which was to become effective June 30, 2012. When the resignation was presented to the school board, the board was concerned with Hewitt's continued employment as principal and thus, Keen proposed the board accept the resignation but seek an earlier effective date. The board agreed to this approach. However, Hewitt refused to sign a revised resignation letter that would have made his resignation effective immediately and attempted to revoke his previous resignation.

Based upon Hewitt's refusal to resign immediately, he was placed on leave while the school board sought cancellation of his administrator's contract. Baldwin sent a letter dated December 22, 2011 to Hewitt, explaining that a preliminary recommendation was being made to the board to have Hewitt's employment as an administrator terminated, effective immediately. Several reasons were listed for Hewitt's termination, including that Baldwin had concerns about Hewitt's ability to be an administrator. The letter also explained that Hewitt could request a "private conference with the School Board regarding this recommendation." (Appellee's App. at 67.) The letter provided that Hewitt would be allowed to bring counsel to the private conference and would be given an opportunity to respond to the reasons set out in the recommended termination.

Hewitt responded in a letter dated December 26, 2011, requesting a private conference before the school board. Hewitt also requested that the school identify the applicable sections of the Indiana Code under which this action was being taken. The school's counsel responded, explaining that "there is no statute applicable to a private conference for cancellation of your administrator's contract." (Appellee's App. at 71.) The letter further explained that, "[t]he statutory process for a private conference is only applicable to the cancellation of a teacher's

3

contract (which, again, the School Corporation has not yet sought cancellation in your case)."
(Appellee's App. at 71.)    The letter explained that at the private conference Hewitt would be
permitted to request records, have counsel present, make a personal statement to the board, and
describe what witnesses would say on his behalf; however, there would "not be witnesses or any
formal evidence procedure." (Appellee's App. at 71-72.)

On January 10, 2012, the school board met in an executive session for a private conference
regarding the recommendation for immediate cancellation of Hewitt's administrator's contract.
Hewitt was present at the private conference and represented by counsel. Once the public meeting
began, the board moved for Hewitt's administrator's contract to be immediately terminated. This
motion was approved by a 4-0 vote.

On February 1, 2012, Hewitt filed a complaint against Westfield Washington School
Corporation, the Board of School Trustees, and various named individuals. (collectively referred
to as the "School")  Hewitt's complaint alleged breach of contract and denial of due process,
challenging the notice and procedure utilized by the school board in immediately terminating his
administrator's contract.

Hewitt and the School each filed cross motions for summary judgment. On January 29,
2014, a hearing was held on the School's motion for summary judgment and Hewitt's motion for
partial summary judgment (on the issue of liability only). On February 18, 2014, the Hamilton
County Superior Court granted summary judgment for the School on Hewitt's breach of contract
and denial of due process claims and denied Hewitt's motion for partial summary judgment.
Hewitt appealed and the Court of Appeals reversed and remanded for further proceedings. Hewitt
v. Westfield Washington School Corp., 24 N.E.3d 459, 460 (Ind. Ct. App. 2014), *reh'g denied*.

The Court of Appeals determined that the trial court erred in granting summary judgment
for the School. Hewitt, 24 N.E.3d at 460. Specifically, the Court of Appeals found that pursuant
to Hewitt's contract, he was entitled to a hearing and that the hearing procedures found in Indiana
Code § 20-28-7.5 et seq., that are related to the termination of teacher contracts, applied to Hewitt's
administrator's contract. Id. at 465. Accordingly, the Court of Appeals held that there were

4

genuine issues of material fact regarding the School's hearing process that precluded summary judgment in its favor. Id. at 467-68. The Court of Appeals did not engage in a separate analysis regarding Hewitt's due process claim, but rather determined there were genuine issues of material fact "[f]or the same reasons" a genuine issue of material fact exists regarding Hewitt's breach of contract claim. Id. at 468.

The Court of Appeals denied the School's Petition for Rehearing. The School subsequently sought transfer, which we granted, thereby vacating the opinion below. See Ind. Appellate Rule 58(A).

**Standard of Review**

"When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court." Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269 (Ind. 2009) (citations omitted). Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C), (H); Freidline v. Shelby Ins. Co., 774 N.E.2d 37, 39 (Ind. 2002). Furthermore, "the trial court's judgment arrives on appeal clothed with a presumption of validity, and the challenging party bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." Williams v. Tharp, 914 N.E.2d 756, 762 (Ind. 2009) (internal citation and quotation omitted.).

**Discussion**

**I.      Breach of Contract**

A regular teacher's contract must be on a form prescribed by the state superintendent. Ind. Code § 20-28-6-5 (2014). A principal or assistant principal's basic contract must be the form teacher's contract as prescribed by the state superintendent. Ind. Code § 20-28-8-2(1).

5

Hewitt's teacher's contract prescribed by the state superintendent contains the following language about a "hearing":

> It is agreed by the parties hereto that in case the said teacher should, after opportunity for hearing with benefit of legal counsel, be held by said employer to be guilty of incompetency, immorality, insubordination or other offenses recognized as just cause according to the law for cancellation of contract, such teacher subject to proper appeal shall be deemed to be dismissed and shall thereafter hold no claim for further compensation subject, however, to the provisions of law concerning the employment and dismissal of teachers which are in force and effect.

(Appellee's App. at 108.)  The contract further provides: "that all laws governing the employment and dismissal of teachers shall be construed to be a part of this contract." (Id.)  The relevant statutory section provides in part that prior to the cancellation of a teacher's contract:

> [T]he teacher may request a private conference with the superintendent. . .
>
> * * *
>
> At the private conference the governing body shall do the following:
>
> (1) Allow the teacher to present evidence to refute the reason or reasons for contract cancellation and supporting evidence provided by the school corporation. Any evidence presented at the private conference must have been exchanged by the parties at least seven (7) days before the private conference.
> (2) Consider whether a preponderance of the evidence supports the cancellation of the teacher's contract.

Ind. Code §§ 20-28-7.5-2 (b), (g).

Here, Hewitt's contract governs both Hewitt's employment as teacher and as principal of MTES.  The School was only seeking to cancel Hewitt's employment as principal, leaving him with his underlying teacher's contract.  After cancelling his employment as principal, the School continued to employ Hewitt under his regular teacher's contract until he resigned.

6

Nevertheless, Hewitt argues that the School breached the contract by failing to: 1) provide him with a hearing; and 2) establish that his conduct constituted just cause for cancellation of his contract to serve as principal of MTES. The Court of Appeals found that the language in Hewitt's contract calling for a hearing, coupled with Indiana Code § 20-28-7.5-2, meant that Hewitt was entitled to the same process due to a teacher facing termination. However, this interpretation is not consistent with the plain language of the contract nor the teacher's termination statute.

With regard to a hearing, the plain language of Hewitt's contract provides that:

> [s]aid teacher should, after opportunity for hearing with benefit of legal counsel, be held by said employer to be guilty of incompetency, immorality, insubordination or other offenses recognized as just cause according to law for cancellation of contract such teacher, subject to proper appeal shall be deemed to be dismissed and *shall thereafter hold no claim for further compensation subject, however, to the provisions of law concerning the employment and dismissal of teachers* which are in force and effect.

(Appellee's App. at 108.) (emphasis added). This provision is clearly with regard to the underlying teaching contract only, as evidenced by the language "shall thereafter hold no claim for further compensation subject, however, to the provisions of law concerning the employment and dismissal of teachers." Only where a principal's underlying teacher's contract is terminated would he have no claim for further compensation. If, like in this case, the contract to serve as principal is terminated but the underlying teaching contract remains, a teacher would necessarily have a continued claim for compensation because he would continue to serve as a teacher.

Additionally, the contract makes reference to and incorporates the teacher's termination statute twice. First, in the paragraph quoted above: "subject, however, to the provisions of law concerning the employment and dismissal of teachers which are in force and effect." (Appellee's App. at 108.) Next, where the contract further provides "that all laws governing the employment and dismissal of teachers shall be construed to be a part of this contract." (Id.)

When construing and interpreting a statute, we must examine all parts of the same act together to promote harmony and consistency. Ind. Dept. of State Revenue v. Stark-Wetzel & Co., 150 Ind. App. 344, 355, 276 N.E.2d 904, 911 (1971). The relevant statutory section provides, in part, that prior to the cancellation of a teacher's contract:

> [T]he teacher may request a private conference with the superintendent.
>
> * * *
>
> At the private conference the governing body shall do the following:
>
> (1) Allow the teacher to present evidence to refute the reason or reasons for contract cancellation and supporting evidence provided by the school corporation. Any evidence presented at the private conference must have been exchanged by the parties at least seven (7) days before the private conference.
>
> (2) Consider whether a preponderance of the evidence supports the cancellation of the teacher's contract.

Ind. Code §§ 20-28-7.5-2 (b), (g).

However, the teacher's termination statute contains provisions that obviously do not apply to principals. For instance, with regard to initiating the cancellation process for teachers, Ind. Code § 20-28-7.5-2(a)(1) provides: "[t]he principal shall notify the teacher of the principal's preliminary decision" and Ind. Code § 20-28-7.5-2(e) provides that if a teacher does not request a conference "the principal's preliminary decision is considered final." This language does not establish a procedure for notifying a principal of either a preliminary or final cancellation decision. Certainly, a principal would not send these decisions to himself.

Additionally, while there are no statutory procedures for cancellation of a principal or other administrator contract, there is a statutory section that addresses the power of the superintendent to terminate principals and teachers. The language in that section further demonstrates that the procedure for terminating a teacher and the procedure for terminating a principal are distinct. Specifically, Ind. Code § 20-26-5-4.5 provides:

(a) The superintendent is responsible for selecting and discharging principals, central office administrators, business managers, superintendents of building and grounds, janitors, physicians, dentists, nurses, athletic coaches (whether or not they are otherwise employed by the school corporation and whether or not they are licensed under IC 20-28-5), and any other employees necessary to the operation of the school corporation, subject to the approval of the governing body.

(b) *Subject to IC 20-28-7.5*, the superintendent and principal are responsible for selecting and discharging teachers, teachers aides, assistant principals, building administrative staff, librarians, and any other employees necessary to the operation of the school, subject to the approval of the governing body.

(emphasis added). Review of this code section reveals that the General Assembly did not intend the teacher's termination statute to apply to principals because subsection (b) that addresses the termination of teachers, makes reference to the teacher termination statute (IC § 20-28-7.5) and subsection (a), that addresses termination of principals, does *not* make reference to the teacher's termination statute.

The Court of Appeals cited Chambers v. Central School Dist. School Board of Green County, 514 N.E.2d 1294 (Ind. 1987) in support of its determination that the statute governing cancellation of a teacher's contract also applies to an administrator's contract. It stated that Chambers stands for the proposition that where there is a written contract including provisions of law concerning the dismissal of teachers, the protections afforded to the principal by the written contract are identical to those contained in the statute and further that the principal "contracted for those provisions." Hewitt, 24 N.E.3d at 464 (citing Chambers, 514 N.E.2d at 1298.)

However, Chambers is not applicable to the case at bar. Chambers involved a situation where the school was seeking to terminate a principal's underlying teacher's contract. Chambers, 514 N.E.2d at 1295. The Chambers court found that where the principal's definite contract of employment was necessarily dependent on his indefinite teacher's contract, when the indefinite contract was cancelled, the definite contract was automatically terminated. Id. at 1297. This case does not involve cancellation of Hewitt's underlying teaching contract. Accordingly, Chambers does not address the question presented in this case. That is, whether it is necessary for the School

9

to use the statutory teacher cancellation process to cancel a principal's administrator's contract but not his underlying teacher's contact. We hold that it is not.

Our analysis is supported by earlier cases where a teacher was employed as a principal pursuant to a written contract and the school sought to cancel the principal's contract only. In New Castle-Henry Township School Corp. v. Hurst, 145 Ind. App. 131, 133, 247 N.E.2d 835, 836-837 (1969), a teacher served as a principal of two elementary schools, then as director of transportation (even though his contract stated "elementary principal"), and the school corporation decided to reassign him as an elementary school teacher. The court held that Hurst was owed no greater duty than oral notification by the school of its intent to reassign him because while he no longer had the benefit of the specific written contract prescribing his position as elementary principal, he was still protected by the indefinite contract granted to him by the Teachers' Tenure Act. Hurst, 247 N.E.2d at 840.

In State ex rel. Cleary v. Board of School Com'rs of City of Indianapolis, 438 N.E.2d 12, 14-15 (Ind. Ct. App. 1982), the court held that mandamus was not an appropriate remedy for breach of a school principal's contract because while Cleary's principal contract was cancelled, his contract as a permanent teacher had not been cancelled. The Cleary court further stated that had Cleary been discharged in violation of his statutory rights under his indefinite teacher's contract, he would have been afforded the remedy he sought; but the court could not engraft onto the statute extended coverage for his role as principal. Id. at 15. The Court found that Clearly's written principal contract served to supplement his rights as a permanent teacher. Id. (citing Hurst, 247 N.E.2d at 839).

In Joseph v. Lake Ridge School Corp., 580 N.E.2d 316, 318 (Ind. Ct. App. 1991), a principal filed a breach of contract case based on a school corporation's decision not to renew his principal contract but to reassign him as a teacher. The principal in that case argued that the Teacher's Tenure Act afforded him greater procedural protections, such that he was entitled to an evidentiary hearing and dismissal for cause. Id. at 319. However, the Court of Appeals found that the plain wording of the statute only applied to cancellation of the principal's underlying teacher's

contract which was not being cancelled.  Id.  Accordingly, the Court of Appeals affirmed the trial court's grant of summary judgment for the school corporation.  Id. at 320.

Hurst, Cleary and Joseph all acknowledge that cancellation of a principal's contract does not require the same level of due process as would cancellation of a teacher's contract. Indeed, "the protections provided to principals under the Teachers' Tenure Law are few, and are much more limited than those provided to teachers."  Caston Sch. Corp v. Phillips, 689 N.E.2d 1294, 1298 (Ind. Ct. App. 1998); See also, Morton-Finney v. Gilbert, 646 N.E.2d 1387, 1388 (Ind. Ct. App. 1995) ("Indiana law protects permanent teachers from cancellation of their contracts without cause and without employing procedural safeguards.  However, these provisions in no way govern the assignment, reassignment and salaries of permanent teachers")(footnote omitted).  Further, "[w]hen interpreting statutes such as the Teachers' Tenure Law, in which the general public has an interest, we must adopt the construction best calculated to protect the public right as against the individual right."  Caston, 689 N.E.2d at 1297; See also Joseph, 580 N.E.2d at 320.

Thus, looking at the plain language of Hewitt's contract, the teacher termination statute, and prior case law, to the extent Hewitt's contract makes reference to: 1) an opportunity for a hearing with a just cause determination; and 2) "all laws governing the employment and dismissal of teachers," these contractual and statutory provisions apply only to Hewitt's underlying teacher's contract.  (Appellee's App. at 108.)  They do not apply to his administrator's contract.  Because the School only sought to cancel Hewitt's administrator's contract and not his underlying teacher's contract, the School did not need to comply with these provisions.

## II.    Due Process

Having determined that because the School was not seeking to terminate Hewitt's underlying teacher's contract, but only his administrator's contract, Hewitt is not entitled to a hearing pursuant to either the teacher's termination statute or the language in his contract referring to a hearing and a just cause determination, we now turn our attention to whether Hewitt received constitutional due process.

11

Procedural due process is the "opportunity to be heard at a meaningful time and in a meaningful manner." Perdue v. Gargano, 964 N.E.2d 825, 832 (Ind. 2012) (citing Goldberg v. Kelly, 397 U.S. 254, 267 (1970)). Generally, this must be a pre-deprivation hearing "appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). When considering what process is due in a specific situation, a court must weigh three factors: 1) the private interest affected by the official action; 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and 3) the "[g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976).

Here, as for the interest affected, Hewitt was not entirely deprived of all employment, but only his employment in the specific role as principal. However, the parties agree that Hewitt had a legitimate property interest in his job. As for the procedures used, Hewitt received:

> Representation by an attorney;
> Advance notice of the basis for the School administration's recommendation;
> Advance notice of how the conference would proceed;
> An opportunity to respond to the School's presentation;
> An opportunity to describe what supporting witnesses would say; and
> An opportunity to describe the contents of any supporting documents.

As for the School's interest, its termination decision is not merely a disciplinary one, but it implicates broader public policy. The School has an interest in maintaining the school system and making the best decision for the well-being of its students and their parents as well as for tax-payers supporting the school system.

Nevertheless, Hewitt argues that he was denied due process for three reasons: 1) the School failed to conduct a full evidentiary hearing including the right to cross-examine witnesses; 2) the School failed to notify Hewitt of the basis for the recommendation that he be terminated (as principal); and 3) the School failed to provide a neutral, fair and unbiased decision-making process.

12

As discussed above, the process due depends on the nature of the case. Here, Hewitt admitted he had a relationship with a teacher, his subordinate. Thus, it is unclear what evidence or cross-examination that Hewitt could have presented that would have added value to the process as he already admitted the conduct at issue. All that was left was the school board's determination regarding what to do about that conduct.

Hewitt argues that the School could not discharge him for having a sexual relationship with a teacher alone, but rather could only discharge him if the School proves that his conduct negatively impacted his ability to effectively lead the school as principal. However, requiring the School to "prove" this impact would be unreasonable. It would have been difficult, if not impossible, to "prove" this impact without creating a disruption in the school, e.g., questioning teachers and staff that may or may not have known about the relationship and may or may not have admitted that it bothered or otherwise impacted them. Additionally, the fact that someone other than Hewitt himself reported the relationship to the School negates his argument that there was no evidence anyone knew about the relationship and thus, there was no impact. Finally, Hewitt did have the opportunity to describe what supporting witnesses would say on his behalf, and the record reflects that Hewitt did not avail himself of that opportunity.

Accordingly, it is unclear how additional procedures would have been beneficial to Hewitt. Once Hewitt admitted the conduct, a sexual relationship with a subordinate teacher, it was up to the school board to respond to that conduct. This is consistent with the Home Rule Act., Ind. Code § 20-26-3, et seq., which provides that: "the policy of the state is to grant to each school corporation all the powers needed for the effective operation of the school corporation" including "all powers granted to the school corporation by statute or through rules adopted by the state board [of education] and . . . all other powers necessary or desirable in the conduct of the school corporation's affairs, even if the power is not granted by statute or rule." Ind. Code § 20-26-3-1; Ind. Code § 20-26-3-3(b). The record reflects that it was the School's past practice to prohibit administrators from having sexual relationships with subordinates. The School acted consistent with that practice and pursuant to the Home Rule Act, which allows the school board broad discretion in managing its affairs.

13

With regard to Hewitt's argument that he was not notified of the basis for the recommendation he be terminated, this position is not supported by the record as the designated evidence contains correspondence to Hewitt from the School which stated: "your conduct impacts your ability to be an administrator." (Appellee's App. at 66.) Thus, Hewitt's argument that he was denied due process because he was not notified of the reason for his discharge because he believed the sole reason he was being terminated was for immorality and he had no idea that his ability to lead the building effectively was at issue fails. Hewitt was properly notified of the reasons for his recommended termination.

Finally, Hewitt argues that the School failed to provide a neutral, fair and unbiased decision-making process because the school board reached a "prejudged determination prior to the private conference." (Appellant's Brief at 12.) It is well established that "a biased decisionmaker [is] constitutionally unacceptable [and] our system of law has always endeavored to prevent even the probability of unfairness." Withrow v. Larkin, 421 U.S. 35, 47 (1975) (internal quotations and citations omitted). However, a decisionmaker is not disqualified "simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances." Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n., 426 U.S. 482, 493 (1976) (internal quotations and citations omitted).

While Hewitt alleges the school board already made up its mind to terminate him prior to the conference, he failed to set forth facts to support this assertion beyond arguing again that the school board did not prove he could not lead the school. Hewitt has not designated any evidence that would suggest bias on the part of the school board. Also, while Hewitt argues that he was not permitted to tell his side of the story during the conference, the record reveals that Hewitt was provided with such an opportunity. Indeed, the school board asked Hewitt "what he thought about this situation and his behavior" and Hewitt declined to respond. (Appellees' App. at 88.) Accordingly, Hewitt's claim that he was denied a fair and unbiased hearing process fails.

In sum, the record reflects that the School provided Hewitt sufficient notice and an opportunity to be heard.

## Conclusion

We hold that when a school corporation seeks to terminate a principal's administrator's contract only and not his underlying teacher's contract, it does not need to provide the hearing process described in the teacher's termination statute. We further hold that the language in Hewitt's form teacher's contract referring to a hearing with the benefit of counsel and a just cause determination also applies only to Hewitt's underlying teacher's contract and not his administrator's contract. Finally, we hold that under the facts of this case, Hewitt received constitutional due process. We therefore affirm the trial court's grant of summary judgment for the School.

Rush, C.J., Dickson, Rucker and Massa, J.J., concur.